THE UNITED STATES, APPELLANT v. JOSEPH NOURSE, COM-
PLAINANT.

The agent of the treasury of the United States, under the provisions of the act of
congress passed on the 15th of May 1820, entitled "an act for the better or-
ganization of the treasury department," issued a warrant to the marshal of the
district of Columbia, under which the goods and chattels, lands and tenements
of Joseph Nourse, late register of the treasury of the United States, were attached
for the sum of eleven thousand seven hundred and sixty-nine dollars and thir-
teen cents, alleged to be due to the United States upon a settlement of his ac-
counts at the treasury of the United States. Mr Nourse, under the authority of
the fourth section of that act, applied to the district judge of the district of Col-
umbia, for an injunction to stay proceedings under the warrant, and alleging that
a balance was due to him by the United States, as commissions for the expen-
diture of large sums of money for the United States, and as a compensation for
other duties than those of register of the treasury, in the disbursement of the said
sums of money, to which commissions and compensation he claimed to be en-
titled, according, as he alleged, to the established practice, and by the applica-
tion to his claims of the same rules which had been applied to other and similar
cases in the adjustment of accounts at the treasury department. The district
judge granted an injunction to stay proceedings under the warrant; and the
United States having filed an answer to the bill of Mr Nourse, auditors were
appointed by the district judge to audit and settle the accounts of Mr Nourse
with the United States. The auditors reported the sum of twenty-three thou-
sand five hundred and eighty-two dollars and seventy-two cents due to Mr
Nourse by the United States, for extra services rendered to the United States
in receiving and disbursing public money. Allowing credit in the audit of the
accounts of the sum of eleven thousand seven hundred and sixty-nine dollars
and thirteen cents; claimed by the United States, a balance of eleven thousand
eight hundred and thirteen dollars and fifty-nine cents would be due to Mr
Nourse. The district judge made a decree that the injunction should be per-
petual. The United States appealed to the circuit court; and the decree for a
perpetual injunction was affirmed in that court. The United States appealed
to the supreme court; and on a motion by the appellee to dismiss the appeal for
want of jurisdiction, it was held that no appeal is given by the act of congress
from a decree of the district judge to the circuit court.

The special jurisdiction created by the act of congress must be strictly exercised
within its provisions. A particular mode is pointed out by which an appeal
from the decision of the district judge may be taken by the person against
whom proceedings have issued; consequently, it can be taken in no other way.
No provision is made for an appeal by the government; of course none was
intended to be given to it.

It appears that no provision is made in the general act organizing the courts of
the United States to authorise an appeal from the judgment or decree of the
district court to the circuit court; except in cases of admiralty and maritime
jurisdiction: On the principle of the case of the United States v. Goodwin, the

appeal in this case cannot be maintained.   If it be a case in chancery, no provision is made in the general law to appeal such a case from the district to the circuit court.

APPEAL from the circuit court of the United States for the county of Washington, in the district of Columbia.

Mr Coxe, for the complainant, moved to dismiss this appeal for want of jurisdiction.

The circumstances and proceedings in this case, as exhibited in the record, were the following:

Joseph Nourse was removed from the office of register of the treasury of the United States in 1829.  The following communication was afterwards addressed to him from the treasury department.

Treasury Department, Comptroller's Office,
26th June 1829.

Sir—Upon a statement of a general account, comprehending the different agencies under which you acted as late register of the treasury, the following balances were found to be due on them, respectively, to the United States, to wit:

| | |
|---|---|
| As agent for the joint library committee of congress, | $2,502 55 |
| Ditto for paying the expenses of stating and printing the public accounts, | 934 98 |
| Ditto for paying the superintendent and watchmen of the buildings occupied by the state and treasury departments, | 1,325 41 |
| Ditto for paying the expenses of printing certificates of the public debt, | 1,011 29 |
| Ditto for paying the contingent expenses of the treasury department, | 5,994 90 |

Amounting, in the whole, to $11,769 13

In the general account rendered by you, a balance of nine thousand three hundred and sixty-seven dollars and eighty-seven cents is claimed; between which and the balance above stated, there is a difference of twenty-one thousand one hundred and thirty-seven dollars; and is occasioned, with the exception of fifty-four dollars and fifty cents paid to Gabriel Nourse and James Watson, suspended for want of vouchers,

by your having charged a commission of two and a half per cent on all the moneys which have passed through your hands, under the different agencies above specified, but which the accounting officers of the treasury could not allow; there being no law to authorise or sanction such a charge.

A copy of the treasury settlement of your account is inclosed for your information. It becomes my duty to request that you will deposit the abovementioned balance of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, in the office of discount and deposit of the branch bank of the United States at Washington city, to the credit of the treasury of the United States, taking duplicate receipts therefor from the cashier, one of which you will forward to this depart- ment.                    Respectfully,

Jos. ANDERSON, Comptroller.

Jos. NOURSE, Esq., late Register of the Treasury.

The request contained in this letter not having been com- plied with, on the 14th of July 1829, the following process was issued by order of the agent of the treasury.

To Tench Ringgold, Esquire, Marshal of the District of Columbia.

Whereas Joseph Nourse, late register of the treasury, in re- lation to his several accounts as United States agent, stands indebted to the United States in a cash balance of eleven thousand *seven* and sixty-nine dollars and thirteen cents; agreeably to the settlement of his account, made by the proper accounting officers of the treasury, a copy of which is herewith inclosed; and whereas the said Joseph Nourse, having failed to pay over according to the act of congress, passed the 15th day of May 1820, entitled " an act for the better organization of the treasury department," the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, these are, therefore, in pursuance of the said act, to command you to proceed immediately to levy and collect the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, by distress and sale of the goods and chattels of the said Joseph Nourse, giving ten days previous notice of such in- tended sale, by affixing an advertisement of the articles to be sold at two or more public places in the town or county where the said goods or chattels were taken, or in the town or county

[United States v. Nourse.]

where the owner of such goods or chattels may reside; and should there not be found sufficient goods and chattels to satisfy the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, remaining due and unpaid as aforesaid, you are hereby commanded to commit the body of the said Joseph Nourse to prison, there to remain until discharged by due course of law: and should the said Joseph Nourse be committed to prison, as aforesaid, or if he abscond, and goods and chattels sufficient to satisfy the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, be not found, you are hereby commanded to levy upon, and expose to sale, at public auction, for ready money, to the highest bidder, the lands, tenements and hereditaments of the said Joseph Nourse, or so much thereof as may be necessary to satisfy the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, or whatever sum there may remain due and unpaid thereof, after you shall have given notice of the said sale, at least three weeks prior to its taking place, in not less than three public places in the county of district where such real estate is situate; and all moneys which may remain of the proceeds of such sale, after satisfying the said sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, and paying the reasonable costs and charges of the sale, you are required to return to the proprietor or proprietors of the land or real estate sold as aforesaid: and whatever you may do in obedience to this warrant, make return thereof to this office; and for so doing this shall be your sufficient authority. Given under my hand and seal, at my office, in the department of the treasury of the United States, at the city of Washington, in the district of Columbia, this fourteenth day of July, in the year of our Lord one thousand eight hundred and twenty-nine.        S. PLEASONTON [SEAL].

*Agent of the Treasury.*

This warrant was issued under the second section of the act of congress passed May 15, 1820, 3 Story's Laws U. S. 1791, entitled "an act providing for the better organization of the treasury department." The third section provides "that if any officer employed, or who has been heretofore employed in the civil, military or naval departments of the government, to disburse the public money appropriated for the service of those

VOL. VI.—3 K

departments respectively, shall fail to render his accounts, or to pay over in the manner and in the times required by law, or the regulations of the department to which he is accountable, any sum of money remaining in the hands of such officer, it shall be the duty of the first or second comptroller of the treasury, as the case may be, who shall be charged with the revision of the accounts of such officer, to cause to be stated and certified, the account of such delinquent officer to the agent of the treasury, who is hereby authorised and required, immediately, to proceed against the delinquent officer in the manner directed in the preceding sections, all the provisions of which are hereby declared to be applicable to every officer of the government charged with the disbursement of public money, and to their sureties, in the same manner and to the same extent as if they had been described and enumerated in the said section."

The second section of the act directs the warrant to issue to the marshal of the district where the delinquent resides; and that the marshal shall proceed to levy the sum due, by distress and sale of the goods and chattels of such delinquent, and if there be not sufficient goods and chattels to satisfy the warrant, the marshal is authorised to take the person of the delinquent, and to commit him to prison, there to remain until discharged by due course of law, &c.

The fourth section provides, that if any person shall consider himself aggrieved by any warrant issued under the act, he may prefer a bill of complaint to any district judge of the United States, setting forth the nature and extent of the injury of which he complains; and thereupon the judge aforesaid may, if in his opinion the case requires it, grant an injunction to stay proceedings on such warrant altogether, or for so much thereof as the nature of the case requires; but no injunction shall issue until the party applying shall give bond and sufficient security, conditioned for the performance of such judgment as shall be awarded against the complainant, in such amount as the judge granting the injunction shall prescribe: nor shall the issuing of said injunction in any manner impair the lien produced by the issuing of such warrant. And the same proceeding shall be had on such injunction as in other cases, except that no answer shall be necessary on the part of the United States; and if upon

dissolving the injunction, it shall appear to the satisfaction of the judge who shall decide upon the same, that the application for the injunction was merely for delay, " the judge may add damages, not to exceed ten per centum on the principal sum."

The fifth section provides, that such injunctions may be granted in or out of court; and the sixth section enacts, "that if any person shall consider himself aggrieved by the decision of such judge, either in refusing to issue the injunction, or if granted, on its dissolution, it shall be competent for such person to lay a copy of the proceeding had, before the district judge of the supreme court, to whom authority is hereby given, either to grant the injunction or permit an appeal, as the case may be, if in the opinion of such judge of the supreme court the equity of the case requires it; and thereupon the same proceedings shall be had upon such injunction in the circuit court as are prescribed in the district court, and subject to the same conditions in all respects."

The marshal of the district of Columbia having levied the warrant on the lands and tenements, goods and chattels of Mr Nourse; on the 25th of August 1829, he presented to the district judge of the United States for the said district, the following bill for relief.

To William Cranch, Esq., chief justice of the District of Columbia, and judge of the district court of the United States for said district:

This the bill of complaint of Joseph Nourse, late register of the treasury of the United States, shows that his public accounts as such register, and agent of the treasury department in disbursing certain funds, and settling certain accounts of contingencies and other miscellaneous matters, and as agent for the joint library committees of congress, matters altogether distinct from, and unconnected with, his duties as such register, have been settled at the treasury since his removal from office; upon which settlement, a pretended balance has been found against him for the sum of eleven thousand two hundred and fifty dollars and twenty-six cents; for which a warrant of distress has been issued against his lands and tenements, goods and chattels, by Stephen Pleasonton, Esq., agent of the treasury, in the pretended execution of the act of congress, passed on the 15th day of May 1820, " providing for the better or-

ganization of the treasury department," which warrant has been levied, during the absence of this complainant, on his lands, tenements, goods and chattels, by the marshal of this district; copy of which is annexed. That the said account is unjust and illegal; and so far from any balance being due thereon to the United States, a considerable balance should have been struck thereon in favour of this complainant, as appears by an account hereto annexed, which he declares is just and true.

That, besides his regular duties as register, established by law, and stated according to the custom and routine of his office as such register, he was, for a long course of years, that is to say, from the year 1790 till his recent dismission from office, duly employed by the proper department of the government of the United States, in the separate, independent, and wholly extra business of special agent for the disbursement of the contingent funds of the treasury department, and for the settlement, as such special agent, of all the numerous accounts connected with the disbursement of those funds.

That this distinct branch of duty, which he took upon himself, at the special instance and request of the proper department of the government, and having competent authority to engage him or any other agent in that capacity, and for the performance of those duties, devolved upon him great labour, responsibility, and risk, altogether independent of, and apart from, his proper duties as register, and occupied a great portion of his private hours, that is, of those hours, when, according to the established order and routine of his department, he was altogether discharged and free from the proper duties appertaining to his office of register, and had his time entirely at his own disposal, but for his employment as special agent as aforesaid. That the extent of the extra labour and responsibility so devolved upon him cannot be adequately described or conceived, without a reference to, and inspection of, his books, bank accounts, and vouchers connected with this branch of his employment in the public service; and he therefore prays that these documents may be ordered to be produced from the treasury department, and audited in this court: that, besides the great labour and consumption of time induced by this extra employment, he was exposed to considerable pe-

[United States v. Nourse.]

cuniary losses, from the ordinary errors that occasionally occur in the accounts of the best accountants, from the multiplicity and minuteness of the various accounts and vouchers to be settled and preserved: that when he undertook this branch of public employment, the precise nature and amount of compensation therefor were not ascertained by any particular stipulation: that, if the government had employed any indifferent person to perform these duties, without any other precise compensation stipulated beforehand, a reasonable mercantile commission or per centage on the sums disbursed would have resulted to such person, according as well to general usage as to the custom of the treasury department in the like cases. That the usage of the treasury department, and other departments of the government, has invariably been, since the organization of the general government, to allow such commissions or *per centage*, not only to unofficial persons so employed, but to official persons and clerks of the departments, when such duties were distinct from the stated duties appertaining to their offices and stations, notwithstanding such official persons were in the receipt of fixed salaries for their stated duties.

That, as early as the year 1800, this complainant made out an abstract of his disbursements under these extra agencies, claiming to be allowed a compensation therefor; which original abstract is on file in the treasury department; from whence he prays that it may be produced and audited in this court. That he has duly made out and presented his account to the proper accounting officers of the treasury, charging his commission at the rate of two and one half per cent on the amount of his disbursements, which, if allowed, would, after a full and fair settlement of all his public accounts, leave the United States indebted to him in a balance of nine thousand eight hundred and eighty-six dollars and twenty-four cents; which he has good reason to believe, and does verily think and believe, to be justly and equitably due and owing to him from the United States; as stated in his said annexed account. That the accounting officers of the treasury have altogether rejected and thrown out his said charge, and denied him any manner of compensation for his extra services as such special agent as aforesaid, not upon the ground or pretence that his charge of commission is too high or unreasonable, if he were entitled to

any compensation; but that he is not entitled to any compensation whatever for his extra services as such special agent, and pretending that his stated salary as register shall be received as full compensation, not only for his proper duties as register, but for his extra employment and services in the agencies above mentioned.

That the commissions or per centage so charged by the complainant are not only reasonable and usual in the like cases, but are an inadequate compensation for the peculiar labour and responsibility of the complainant in the discharge of the particular employment and duties for which they are charged. And this complainant further shows, that he is well advised by counsel, and believes, that the act of congress under which the said warrant of distress is pretended to have been issued, being a law in derogation of common right, and of the ordinary and approved remedies under the general law of the land, ought to be construed with the utmost strictness against any authority assumed under it, and in favour of the citizen; but, that in no reasonable construction of the same, can this complainant or his accounts, either as register of the treasury, or as the special agent of the treasury, or as the agent of the joint library committees of congress, above described, be brought within the description of persons over whom that act gives jurisdiction to the agent of the treasury.

By the second and third sections of the said act, the officers subjected to the summary jurisdiction and process of such treasury agent are distributed into two classes: 1st, those employed to collect and receive the public money before it is paid into the treasury; 2dly, those employed to disburse the public money after it is paid into the treasury, appropriated for the service of the *civil, naval,* or *military departments.* There can be no pretence whatever, and he presumes none is set up, to bring this complainant within the first class; and, therefore, the only question is, whether he falls within the second.

This class he is well advised and believes was intended to comprehend none but the *regularly appointed officers* of the government, charged, ex officio, with disbursements for any of the three great departments named in the act. That this description cannot embrace mere subordinate agents employed

by any particular department of the government, as by the treasury, to disburse the contingent funds of the department, such agent 'not being an *officer* who is, ex *officio*, to disburse the public money appropriated for the service of either of the three great departments named; but, in the strictest sense, a mere unofficial agent, employed informally, without any letter patent, or commission or letter of appointment, to perform extra services for the treasury as a commission merchant or banker, to make purchases or accept bills on public account, might be employed, without attaching to such commission merchant or banker the character of functions of a public *officer*. Whereas the third section of the act throughout describes the party subjected to the summary process authorised by it, as "any officer employed," &c.; "such delinquent officer," &c.: and as to his office of register of the treasury, which constituted the only *official* relation between him and the government of the United States, it was not an office, the duties or employment of which consisted in the disbursement of any public money appropriated for the services of any of the three great departments of service named in the third section of the act of congress.

Nor did this complainant, *as such register*, receive or disburse, nor was he competent, as such register, to receive or disburse, any of the public money charged to him in the said pretended account so settled by the accounting officers of the treasury, and upon which the said warrant of distress was issued as aforesaid.

Nevertheless, the said accounting officers of the treasury have unjustly and unlawfully charged him, in the settlement of his official account as register, with all the moneys received by him for disbursement as such special agent as aforesaid; and the whole of the alleged delinquency is charged to him officially as register, and under that official head; and against him, officially as register, such warrant was issued. Whereas, his said account for the receipts and disbursements of public money was wholly *unofficial*, and connected with his official duties and station as register.

The complainant therefore submits, that, whatever its merit, in the opinion of the court, of the essential dispute on matters of account between him and the accounting officers, the par-

[United States v. Nourse.]

ties may be remitted to the ordinary process of law, so as to have a fair trial and regular adjudication of the merits, before execution be had of his body or estate. Therefore, this complainant prays that injunction may be granted to him to stay proceedings on the said warrant altogether; and that he may have such further and other relief in the premises, as to this court shall seem meet, and agreeable to equity and good conscience.                    JOSEPH NOURSE.

The district judge granted the injunction as prayed for, which was served upon the agent of the treasury, and a citation was issued, directed to him, to appear and answer the bill of injunction at the next court, to be holden in Alexandria.

The following answer was filed on behalf of the United States.

The answer of the United States of America, to a bill of injunction filed against them in the district court of the United States for the district of Potomac, by Joseph Nourse, late register of the treasury of the United States.

The United States, by Thomas Swann, their attorney, answer and say, that, upon a settlement by the proper officers of the government of the general account of the complainant, comprehending the different agencies under which he acted as register of the treasury, he was found indebted to the United States in the sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents, as will appear by the account settled as aforesaid, a copy of which is exhibited by the complainant, in his bill of complaint, with the letter of Joseph Anderson, comptroller, and to which the United States refer, and request that they may be considered as a part of this answer.

The United States, by their attorney aforesaid, state, that the said complainant had rendered to the United States his general account against them, charging a commission of two and a half per cent upon all moneys which had passed through his hands in the different agencies in which he had acted as aforesaid, and claiming, by that account, a balance, as due to him from the United States, of nine thousand three hundred and sixty-seven dollars and eighty-seven cents, as will appear by a copy of the said account, exhibited by the complainant, and made a part also of his said bill of complaint.

[United States v. Nourse.]

The United States, by their said attorney, state, that the grounds upon which the United States had claimed from the complainant the aforesaid balance of eleven thousand seven hundred and sixty-nine dollars and eighty-seven cents, are fully stated and disclosed by the aforesaid letter of the comptroller; and the difference between the account of the United States and that rendered by the complainant, with the exception of fifty-four dollars and fifty cents, as stated in the comptroller's letter, arises from the charges of a commission, as hereinbefore stated, of two and a half per cent upon the public money which had passed through the hands of the complainant as aforesaid.

The United States, by their said attorney, deny that the complainant is entitled to the commission which he claims as aforesaid, and say that there is no law of the United States authorizing any such commission, or any commission whatever upon the public moneys which had passed through his hands as aforesaid; and they insist that the balance of eleven thousand seven hundred and sixty-nine dollars and thirteen cents is justly and fairly due from the complainant to the United States, and that the United States were authorised by law, and fully justified in resorting to the remedy by distress, to enforce the payment of the said balance: the United States do therefore request that the injunction granted to the said complainant in this case may be dissolved, and that they may be permitted to pursue their legal remedies for the recovery of the said balance.          THOMAS SWANN, Att'y U. S.

On the 20th of December 1830, the district judge having heard the counsel on behalf of the complainant, and of the United States, made an order and decree, " that the said Joseph Nourse has produced satisfactory evidence that he did, for a long course of years, render various services, and disburse large sums of money for the use of the United States, and, at their request, from time to time, made, through the respective secretaries of the treasury of the United States for the time being; which services and disbursements were performed and made by the said Joseph Nourse, over and above the services required by the duties of his office as register of the treasury of the United States, for which said extra services and disbursements he has never been allowed any compensation in the

settlement of his accounts at the treasury department: and, it being by the court deemed expedient to ascertain, by the report of auditors to be appointed by the court for that purpose, the value of those services, and the compensation to which the said Joseph Nourse is equitably entitled therefor, and for his disbursements as aforesaid, it is further ordered, that Robert J. Taylor, Phineas Janney, and Colin Auld, be, and they are hereby, appointed auditors to ascertain the said value and compensation, and to report thereon to this court without delay; and that such of the papers and evidence in this cause as relate to that subject, be submitted to the said auditors for their better information thereon.

The auditors, on the 31st December 1830, reported as follows:

The subscribers, appointed auditors by the decree of the court in the above cause, made on the 20th day of this month (of which a copy is annexed), to value the services of the complainant, and the compensation to which he is equitably entitled for the same, and for disbursements of public money made by him, at the request of the United States, through the respective secretaries of the treasury for the time being, over and above the services required by the duties of his office of register of the treasury of the United States, respectfully report; that it appears from the documents and evidence submitted to them, that, from the 10th of April 1790 to the 31st of May 1829, thirty-nine years, one month, and twenty-one days, the complainant, as agent for the payment of contingent expenses of the treasury department, for stationary, and printing of public accounts, for payment of the superintendent and watchman of the state and treasury departments, for miscellaneous disbursements, comprising fifteen different agencies, for advances made to sundry persons who brought from the several states the votes for presidents and vice presidents of the United States, and on account of the congressional library, disbursed the sum of nine hundred and forty-three thousand three hundred and eight dollars and eighty-three cents; the services rendered in which said agencies, and in making said disbursements, were over and above the services required of him by the duties of his office as register of the treasury of the United States: we find, that, for similar services, where no

[United States v. Nourse.]

special provision had been made by law, a commission of two and a half per cent has been heretofore, in many cases, allowed at the treasury of the United States; and we are of opinion, that a commission of two and a half per cent on the said sum of nine hundred and forty thousand and three hundred and eight dollars and eighty-three cents, amounting to the sum of twenty-three thousand five hundred and eighty-two dollars and seventy-two cents, is an equitable compensation for the services so as aforesaid rendered to the United States by the said Joseph Nourse; and that the said services are equitably worth the said last mentioned sum.

All which is respectfully submitted.    R. J. TAYLOR, PHINEAS JANNEY, COLIN AULD.    Alexandria, Dec. 31, 1830.

Whereupon the following decree was made by the district judge, on the 4th day of January 1831.

And at a court continued and held for the said district, the 4th day of January 1831, the auditors, Robert J. Taylor, Phineas Janney, and Colin Auld, to whom, by an interlocutory order of this court, bearing date December 20th, 1830, it was referred to ascertain the value of the services rendered by the complainant to the defendant, over and above the regular official duties attached to his office of register of the treasury of the United States, as set forth in said interlocutory order as aforesaid, having made and returned their report to the court, bearing date the 31st day of December 1830, in and by which the said auditors state, among other things, that a commission of two and a half per cent upon the sum of nine hundred and forty-three thousand three hundred and eight dollars and eighty-three cents, amounting to the sum of twenty-three thousand five hundred and eighty-two dollars and seventy-two cents, is an equitable compensation for the services so as aforesaid rendered to the United States by the said Joseph Nourse; and that the said services are equitably worth the said last mentioned sum, and no sufficient reasons having been presented to the court against the confirmation of said report of said auditors, it is thereupon, this 4th day of January 1831, ordered, adjudged, and decreed, that the said report be, and the same is hereby, in all particulars, confirmed and made absolute.

And the said cause now also coming on for final decision upon said report, and the bill, answer, replication, exhibits, de-

SUPREME COURT.

positions, and other evidence admitted by the parties, and upon the equity reserved under and by the said interlocutory order, it is further ordered, decreed and adjudged, that the injunction heretofore granted in this cause be, and the same is hereby perpetuated; and that the said defendants be, and they are hereby, perpetually enjoined from proceeding further against the said complainant upon the warrant of distress in the bill mentioned, for or on account of a claim or demand, for the recovery of which the said warrant of distress issued.

The United States appealed to the circuit court, in which court a motion was made to discuss the appeal, which was overruled. The circuit court affirmed the decree of the district judge, and the United States prosecuted this appeal.

The motion to dismiss the appeal was argued by Mr Coxe and Mr Sergeant, for the appellee; and by Mr Swann, district attorney, and Mr Taney, attorney-general, for the United States.

For the appellee it was contended, that the circuit court had no jurisdiction to entertain an appeal from the decree of the district judge; and that therefore no appeal will lie from the circuit court to this court. The act under which the warrant was issued against Mr Nourse, authorises an anomalous proceeding; and as it assumes a penal character, subjecting the party who resists the operation of it to the penalty of ten per cent on the debt, it is to be construed with a strict observance of its provisions. No right of appeal is given, in terms, to the United States; and in all cases under the judiciary acts, when an appeal is given, it is authorised by express provisions.

In this act the right of appeal is given to the party aggrieved only, and not to the United States: they not being aggrieved, cannot have an appeal; as the language of the law authorises it in favour of the person against whom the warrant has issued, and his appeal is to a judge of the supreme court.

The appeal now before the court has been taken as if this was the case of an ordinary suit: but this is denied. The decree is not that of a court; the proceeding is before the district judge, not in his character as composing the district court. The bill for an injunction may be preferred to any district

judge of any district; and is not confined to the district judge of the district where the party resides. The United States are not brought into court. They may not appear. The whole proceeding is that of a judge, not judicially. The directions of the statute must be pursued. Cited, Bac. Ab. stat. C. 3 Mass. 307. 1 Paine, 406. 6 Dane's Ab. 593. A new remedy or new jurisdiction is not to be extended when it is summary. 6 Dane's Ab. 596. If the decision of the district judge had been against Mr Nourse, he could not have had an appeal.

All the authority of the circuit and district courts of the United States is derived from the statutes; and in the law organizing those courts, no right of appeal in such a case is allowed.

There is no force in the argument ab inconvenienti, when urged for the United States. The government had a right to proceed in the ordinary course; and by so doing, all the right to have a final judgment in this court upon their claim could have been exercised. But if another mode is chosen, they are bound by it; and it is not a subject of complaint that they must be regulated by the law, the provisions of which they have voluntarily elected to employ.

The decision of this court in the case of Bullock, a case arising in Georgia seven years ago, determined the principle contended for on the part of the appellee. The opinion of Mr Justice Johnson in that case, which was that no appeal could be taken by the United States from the decision of the district judge, must have been known to the treasury; and it should be considered as having settled the law. (a)

(a) The proceedings in the case of the United States v. Bullock, referred to in the arguments, were as follows.

District of Georgia. In the district court. United States v. A. S. Bullock. Petition, &c.

This case is brought before me again by a petition in nature of a petition for leave to file a bill of review. In order to a correct understanding of this proceeding it is necessary to observe, that on the 3d September 1822, a warrant of distress issued from the treasury department against the defendant, stating that he was in arrears and indebted to the United States in a certain sum of money, and directing the marshal of this district to proceed, by levy and sale of the defendant's property, and if a deficiency should happen, to arrest his person. While the marshal was proceeding as directed, the defendant filed a bill of complaint before me, and, after consideration, an injunction was allowed, according to the act of congress of 15th May 1820. Upon the hearing of a motion for a dissolu-

[United States v. Nourse.]

The act under which the warrant was issued against Mr Nourse, is not a judiciary, but a treasury act. It was passed

tion of the injunction, it was found necessary to submit the accounts to auditors, which was done; and their report returned and filed. The defendant paid the amount adjudged to be due to the United States, and the case there rested. The United States now petition for a re-hearing of the cause, alleging that new and other evidence has been discovered since the hearing, which it was not in their power to produce at that time. The question now before me is, have I now the power and authority to review my own determinations, under the act of congress before mentioned. I must give to that part of the act relating to the case now before me such a construction as it requires, having in view the intention of the legislature. It will be observed, that there was no equity jurisdiction given to the district courts at their organization; but by an act of congress, district judges were allowed to grant injunctions in all cases, which before was confined to supreme court judges; and this authority was very limited. Now it appears to me it never was the meaning or intention of the act of the 15th May 1820, to grant all and unlimited equity powers to district judges; but rather a limited authority to grant or not, dissolve or continue injunctions, in such cases alone as the act contemplates; to grant to complainants a hearing, and adjust according to equity and justice the real balance due the United States; and direct the warrant of distress to be proceeded on or restrained accordingly: and here I take the power and authority of district judges cease. But it is said, that the district court is a court of record, and all courts of record are authorised and have power to correct their own errors.

This is true of common law courts, but not so of the United States courts; they are courts created by statute, their jurisdiction limited and their errors corrected by higher tribunals. And in all cases like the one now before me, individuals are provided for, and if the United States are not, it is because the act itself in this respect is deficient. Congress thought proper to grant this summary mode of proceeding, and it is with courts to pursue it, and take it as they find it. Upon the whole, I am of opinion that the petition ought and must be dismissed for want of jurisdiction or authority to proceed in the case. It is to be remarked, that had I the power to proceed, it is extremely doubtful whether the petitioners bring themselves within the rules prescribed by courts of equity for granting a bill of review, for the receipt that now seems to have been found always in the department—it was about eight years before it was looked for, and then certified to be lost or burnt:—whether reasonable diligence has been made use of to search for it, is yet very questionable. It is ordered that the petition be dismissed.      J. CUYLER.

Extract from the minutes of the district court. 4 June 1829.

GEORGE GLEN, Clerk.

*Statement.*—The application to the district judge was for a *re-hearing.* It was refused:

1. Because in the opinion of that judge, the act of the 15th May 1820 did not vest in the district court *general* and *unlimited equity* powers; but merely gave a *special authority*, which having *been executed*, could not now be *reviewed* by that court.

2. *If* the court had discretionary power to grant a re-hearing, the United States had not entitled themselves to it, having been guilty of *laches*.

[United States v. Nourse.]

for certain purposes; and if it does not accomplish those purposes, let there be other legislative provisions.

The appellate power of this court is not to be inferred from doubtful expressions in the law. Those who assert the power, are bound to show its existence affirmatively; they must show this, by the express terms of some act of congress. It must be found in the act itself, or in some other law.

The act of congress under which the warrant was issued, gives no appeal expressly—none by reference or by implication; nor does it give such a proceeding as in its nature supposes an appeal, but exactly the contrary. To establish the right of appeal under this law, it is necessary to maintain that in every case in which a judge is called upon to act, the right of appeal exists.

In the very nature of the proceedings there is an inconsist-

Under the direction of the president of the United States, the attorney-general submitted to the supreme court a motion for a mandamus, requiring the district judge *to proceed to re-hear the cause.*

The attorney-general mentioned to the court the case of the United States v. Lawrence, 3 Dall. 42, and suggested the doubt arising from that case. It was a refusal to grant a mandamus to a district judge, for refusing to *issue a warrant* declaring that this court would not compel the district judge, while acting in a judicial capacity, to decide according to the dictates of any other judgment but his own.

The supreme court refused the motion, in the principal case; without assigning its reasons at large.

Supreme Court of the United States of January Term, Ex parte The United States. In the matter of the United States v. Archibald S. Bullock, &c.

Mr Attorney-General moved the court for a rule to be served on the district judge of the United States for the district of Georgia, commanding him to be and appear before this court, to show cause why a mandamus should not be awarded to the said district judge, commanding him to proceed in the case of The United States v. Archibald S. Bullock, collector, &c. The consideration of which motion is ordered to be postponed. March 6, 1830.

Ex parte The United States. In the matter of the United States v. Archibald S. Bullock, &c.

On consideration of the motion made by Mr Attorney-General, on a prior day of this term, to wit, on Saturday the 6th day of March of the present term of this court, for a rule to be served on the district judge of the United States for the district of Georgia, requiring him to be and appear before this court, to show cause why a mandamus should not be awarded to the said district judge commanding him to proceed in the case of the United States v. Archibald S. Bullock, collector, &c.: it is ordered and adjudged by this court, that the said motion be, and the same is hereby overruled; and that the rule prayed for be, and the same is hereby refused.

ency with a right to appeal in the government; and such a right is in opposition to the policy of the law. The purpose of the law was to give a summary process in cases of extreme urgency; but an appeal would defeat this object, as, if the United States could appeal, so could the defaulter. The act establishes a system of its own; and the court cannot go out of the law for its aid, or to introduce or engraft upon it that which it does not direct or authorise.

Nor is the right of appeal given in any other act of congress. It is conceded that it does not exist under the judiciary act of 1789; but it has been asserted that it may prevail under the act of 1803.

But this position is not correct. The act of 1803 gives no appeal from the district judge, nor does it give an appeal in equity, for the district judge has no equity jurisdiction. When he exercises that jurisdiction, it is as a judge of the circuit court. The appeal from the district judge is given by that act in cases of common law, and in admiralty and maritime cases.

But this point has been decided in the case of the United States v. Goodwin, 7 Cranch's Rep. 108, by which it has been adjudged that the act of 1803 does not apply. Cited also, 2 Peters's Cond. Rep. 436, and the notes of cases collected there. Cited also, 6 Cranch's Rep. 233, 235.

For the United States, Mr Swann and the attorney-general contended, that the jurisdiction of the court was manifest, and was essential to preserve the rights of the United States. A new remedy given by a statute, does not require an express provision for an appeal; this right results from the general power of this court over the inferior courts.

Equity jurisdiction is given to the district judges, and there is incident to this grant of power, all that is required to the completion of ample justice to both the parties. The right to an appeal is necessary to this, or how else shall it be attained. The law is exceedingly special in providing an appeal by the party aggrieved.

It is considered that the district judge proceeded in this case, as a case in the district court; and from that court there was an appeal to the circuit court, and from that court to this court. The question now before this court, is not whether the district

or circuit court had jurisdiction. That question may come up when the argument takes place on the merits, but cannot arise on a motion to dismiss the cause.

The only question here is, whether this court will take jurisdiction over a decree of the circuit court, when the subject was within its jurisdiction.

The original proceedings were on the part of the United States, but those summary proceedings are not now in review. By the filing of the bill, the case has become one in equity, and is to be governed by all the rules of equity proceedings. It has become a proceeding by a debtor against the United States; the United States have, by instituting their proceedings under the act, consented to be sued; and the bill filed by Mr Nourse, is for relief from the judgment against him.

The district judge could not act in the case but judicially, whether in or out of court. He could not hear the merits out of court, nor could he, but in court, grant or dissolve the injunction. The law contemplates a hearing in court: an issue joined or assumed to be joined; by exempting the United States from answering. This is necessarily implied by directing the proceedings " to be the same as in other cases."

All the proceedings after the application for the injunction are judicial, and in court, on a regular proceeding in equity. The power is given to the district judge, for the purpose of stopping the execution; and it is similar to an application for an injunction in any other case. The words " as in other cases," refer to, and authorise all the ordinary proceedings in a chancery suit.

The act of 1803, giving an appeal, extends to decrees in cases like this. The decree of the district court was a final decree, and was therefore within the general language of that act. It gives an appeal from all final decrees, of a certain amount; and all the powers subsequently given to the district courts, where final decrees are made, are under the influence of that law, and become subject to the revision of the superior courts. Cited, 6 Cranch, 51, 333. 5 Cranch, 317. 8 Cranch, 251.

Mr Justice M'LEAN delivered the opinion of the Court.

[United States v. Nourse.]

A motion is made by the counsel for the defendant, the appellee, to dismiss this suit for want of jurisdiction.

The proceedings in this case were instituted by the government, under an act of congress " providing for the better organization of the treasury department," passed the 15th of May 1820.

By the second section of this act, it is provided, " that from and after the 30th day of September next, if any 'collector of the revenue, receiver of public money, or other officer, who shall have received the public money before it is paid into the treasury of the United States, shall fail to render his account, or pay over the same, in the manner or within the time required by law, it shall be the duty of the first comptroller of the treasury to cause to be stated the account of such collector, receiver of public money, or other officer, exhibiting truly the amount due to the United States, and certify the same to the agent of the treasury, who is hereby authorised and required to issue a warrant of distress, against such delinquent officer and his sureties, directed to the marshal, &c. who is authorised to collect the sum remaining due, by distress and sale of the goods and chattels of such delinquent officer, on ten days' notice, &c.; and if the goods and chattels be not sufficient to satisfy the said warrant, the same may be levied upon the person of such officer, who may be committed to prison, there to remain until discharged by due course of law."

The fourth section provides, that if any person should consider himself aggrieved by any warrant issued under this act, he may prefer a bill of complaint to any district judge of the United States, setting forth therein the nature and extent of the injury of which he complains; and thereupon the judge aforesaid may, if in his opinion the case requires it, grant an injunction to stay proceedings on such warrant altogether, or for so much thereof as the nature of the case requires; but no injunction shall issue until the party applying for the same shall give bond and sufficient security, conditioned for the performance of such judgment as shall be awarded against the complainant, in such amount as the judge granting the injunction shall prescribe; nor shall the issuing of such injunction in any manner impair the lien produced by the issuing of such warrant.   And the same proceedings shall be had on such in-

junction as in other cases, except that no answer shall be necessary on the part of the United States; and if upon dissolving the injunction it shall appear to the satisfaction of the judge who shall decide upon the same, that the application for the injunction was merely for delay, in addition to the lawful interest, the judge is authorised to add such damages, as with the interest, shall not exceed the rate of ten per cent per annum upon the principal sum."

The fifth section provides, that such injunctions may be granted or dissolved by such judge, either in or out of court.

And in the ninth section, " that if any person shall consider himself aggrieved by the decision of such judge, either in refusing to issue the injunction, or, if granted, on its dissolution, it shall be competent for such person to lay a copy of the proceedings had before the district judge, before a judge of the supreme court, to whom authority is given, either to grant an injunction or permit an appeal, as the case may be, if, in the opinion of such judge of the supreme court, the equity of the case requires it; and thereupon the same proceedings shall be had upon such injunction in the circuit court as are prescribed in the district court, and subject to the same conditions in all respects whatsoever."

Under these provisions, a warrant of distress was issued against the defendant, as late register of the treasury of the United States, for the sum of eleven thousand seven hundred and sixty-nine dollars and thirteen cents; which was alleged to be a balance found against him in favour of the United States, on a final settlement of his accounts.

On presenting his bill to the district judge, setting forth that he was not indebted to the United States, the defendant obtained the allowance of an injunction, and it was issued on his giving the requisite security.

On the 2d of January 1830, although not required, the attorney of the United States filed an answer to the bill, and, by consent, the cause came on to be heard; when, on motion, the injunction was dissolved, and it was agreed that if the cause should be appealed to the circuit court, that a general replication might be filed, and either party have liberty to take and file such testimony as might have been taken in the district court.

Afterwards, in September 1830, it was agreed between the parties, that " the order for the dissolution of the injunction, and the decree dismissing the bill, having been made under a misapprehension that the evidence might be taken in the circuit court upon the appeal, should be set aside, and the cause be reinstated upon the docket of the district court at the next term, and that it should be set for hearing at that term; and that testimony should be taken," &c.

In pursuance of this agreement, the cause was docketed in the district court; and on the 20th of December 1830, the accounts exhibited by both parties were referred, by the court, to auditors, who, on the 4th of January 1831, reported that the defendant, for certain specified services, which he had rendered the United States, and for which he had received no compensation, was justly entitled to the sum of twenty-three thousand five hundred and eighty-two dollars and seventy-two cents. This report having been duly considered by the court, was " confirmed and made absolute;" and the injunction was decreed to be perpetual.

From this decree, an appeal was taken by the government to the circuit court.

And afterwards, the following decree was made in that court: "whereupon, the record and proceedings aforesaid, with the abstracts and accounts, and all things thereto relating, having been read and fully understood; and after argument of counsel, and mature deliberation thereon had by the court here, for that it appears to the said court that there is no error in the decree in the record and proceedings aforesaid, nor in the giving of the said decree; therefore it is considered by the court here, that the said decree, given in form aforesaid, be in all things affirmed and stand in full force and effect."

From this decree an appeal was taken, by the government, to this court, and the dismission of this appeal is the object of the present motion.

The summary proceedings, authorised by the recited act, were designed to secure the interests of the government in cases where the ordinary process of law would be inadequate. To provide for such emergencies, the treasury department is vested with extraordinary and responsible powers; and to guard the rights of the citizens from any abuse by the exercise

[United States v. Nourse.]

of these powers, a special authority is given to a district judge of the United States, or one of the judges of this court, to arrest the proceedings by granting an injunction.

The judge who allows the injunction, may extend it to the whole or a part of the demand of the government, as the equity of the case may require.    He may grant such injunction or dissolve it, either in or out of court.    As the proceedings on this injunction, in regard to the merits of the case, are to be the same as in other cases of injunction, and may be had before the judge, out of court, and as the district court possesses no chancery powers, the jurisdiction given by this act must be limited by it.

If the party be aggrieved, either by the refusal of the judge to grant the injunction, or by his dissolving it, an appeal may be allowed to the circuit court, by a judge of the supreme court.    As this special mode is pointed out, by which an appeal from the decision of the district judge to the circuit court may be taken, it negatives the right to an appeal in any other manner.

Whilst congress seemed disposed to protect the citizen from oppression by the exercise of the extraordinary powers vested in the government under the act of 1820, they were not willing that the proceedings should be arrested, except upon equitable ground.    No provision is made in the act for an appeal by the government; but it is insisted that this right is secured by the general provisions of the act of 1803.

By the second section of this act it is provided, " that from all final judgments or decrees in any of the district courts of the United States, an appeal, where the matter in dispute, exclusive of costs, shall exceed the sum or value of fifty dollars, shall be allowed."

This act authorises an appeal from a decree or judgment of the district court, rendered in the ordinary exercise of its jurisdiction, which is limited to cases at law, and of admiralty and maritime jurisdiction.    It may be admitted, that an enlargement of the powers of the district court, by giving a new remedy, would not require a special provision to secure the right of appeal: but if a new jurisdiction be conferred, and a special mode be provided, by which it shall be exercised, it is

clear that the remedy cannot be extended beyond the provisions of the act.

If provision had not been made in the act, allowing an appeal to the aggrieved party, under the sanction of a judge of the supreme court, he could take no appeal from the decision of the district judge. And as there is no provision in the act, authorising an appeal by the government; is it not equally clear that it can take no appeal?

In judicial proceedings, no exclusive rights are given to the government in this respect over other suitors, except by statutory provisions. From a decision of the district judge, out of court, how could the government appeal to the circuit court. It is no answer to this question, that the decree under consideration was made by the district judge in court. The right to an appeal cannot depend upon this contingency, and the objection to the appeal in one case is as strong as in the other.

The government consents to have the summary proceedings instituted by its officers arrested on certain conditions, and gives a right to the aggrieved party to carry his complaint to the circuit court; but no appeal is provided for, or seems to be contemplated, in behalf of the government. Having submitted itself to the special jurisdiction created by the act, it is as much bound by the decision of the judge as an individual; and can claim no exemption from the decision, by appeal or otherwise, which does not belong equally to the other party, independent of any special provision.

Having the power to collect in this summary mode the sum due from an individual, as established by the books of the treasury, the legislature may have considered that the interest of the government would be safe in the hands of the judge, to whom the special jurisdiction is given.

It is objected, that in the consideration of this motion to dismiss the appeal for want of jurisdiction, the court cannot look beyond the decree which was made in the circuit court. And that as that court apparently had jurisdiction, this being a chancery proceeding, its jurisdiction can only be questioned, if at all, on the final hearing.

In the discussion of the motion, the jurisdiction of the circuit court has been fully investigated on both sides; and the

[United States v. Nourse.]

question must be considered as much before the court as it could be on the final hearing.   This being a case in chancery, a motion to dismiss for want of jurisdiction may involve all objections to the jurisdiction, which may be urged without a consideration of the merits of the case.

If it clearly appear, that the circuit court had no jurisdiction in this case, still this court may take jurisdiction, so far as it regards the proceedings had before the circuit court; but those proceedings, being wholly unauthorised, must be annulled or reversed.. This court, however, in such case, can take no further jurisdiction of the cause.   They cannot remand the cause for further proceedings to the circuit court, because that court has no jurisdiction; and they cannot retain the cause here for further proceedings, because this court can exercise no appellate jurisdiction which is not given to it by statute.

Upon a deliberate consideration of the case, the court are clearly of the opinion, that the special jurisdiction created by the act of 1820, must be strictly exercised within its provisions.   A particular mode is provided, by which an appeal from the decision of the district judge may be taken; consequently, it can be taken in no other way.   No provision is made for an appeal by the government, of course none was intended to be given to it.

There is another point of view in which this case may be considered, and which is equally conclusive against the jurisdiction of this court.   The jurisdiction of the district court is limited to cases at law, and of admiralty and maritime jurisdiction.   From all decrees over a certain amount, in the latter, appeals may be taken to the circuit court; but judgments of law must be removed by writ of error.

In the case of the United States v. Goodwin, reported in 7 Cranch, 108, this court decided, that no writ of error lies to reverse the decision of a circuit court in a civil action, which had been brought to that court from the district court by writ of error.   This decision was made under the provision of the twenty-second section of the judiciary act of 1799; which subjects no cause to revision in the supreme court by writ of error that was brought from the district to the circuit court, in any other way than by appeal.   And as no cause, except of admiralty and maritime jurisdiction, could be so appealed, it fol-

lowed, under that act, that such cases only, coming from the district to the circuit court, could be taken to the supreme court on a writ of error.

The act of 1803, which provides that, "from all final judgments or decrees in any of the district courts, an appeal, where the matter in dispute, exclusive of costs, shall exceed the sum or value of fifty dollars, shall be allowed to the circuit court;" made no alterations in the law of 1789, as it respects appeals to the circuit court, except in reducing the sum or matter in controversy from three hundred to fifty dollars, on which such appeals shall be allowed. The above provision had no reference to a chancery proceeding, as the district court is not vested with chancery powers; and the words, "final judgments or decrees," refer to judgments and decrees in cases of admiralty and maritime jurisdiction. It therefore follows, that in such cases only, has the law authorised an appeal from the district to the circuit court.

In the second section of the act of 1803, it is also provided, "that from all final judgments or decrees rendered, or to be rendered, in any circuit court, in any cases of equity, of admiralty and maritime jurisdiction, and of prize or no prize, an appeal, where the matter in dispute, exclusive of costs, shall exceed the sum or value of two thousand dollars, shall be allowed to the supreme court." This provision, so far modifies the twenty-second section of the act of 1789, as to allow appeals to be taken from the judgments or decrees of the circuit court in cases of admiralty and maritime jurisdiction; though such causes may have been brought to the circuit court by an appeal from the district court. An appeal is substituted by this act instead of a writ of error, to remove such causes from the circuit to the supreme court.

It might have been contended in the case of the United States v. Goodwin, as it has been argued in this case, that as the supreme court had power to revise the judgments of the circuit court, they could not dismiss the writ of error in that case for want of jurisdiction. But they decided, that their jurisdiction was limited to the provisions of the statute; and that as it contained no provision for the revision in the supreme court by writ of error, of any judgment or decree of the circuit court, in a cause which had been brought to that court,

[United States v. Nourse.]

from the district court; except by appeal, they could not sustain the writ of error.

If, then, it appears that no provision is made in the general act to authorise an appeal from the judgment or decree of the district court to the circuit court, except in cases of admiralty or maritime jurisdiction; is it not clear, on the principle of the case of the United States v. Goodwin, that the appeal cannot be sustained in this case.

If it be a case in chancery, as denominated by the counsel for the government, no provision is made in the general law for the appeal of such a case from the district to the circuit court.

Whether we look to the general law which regulates appeals, or to the provisions of the act of 1820, which confers the special jurisdiction that was exercised in this case; the want of jurisdiction in the circuit court is equally clear.

The decree of the circuit court must be reversed.