Mr. Justice Nelson
delivered tbe opinion of tbe court:
Tbis is a petition on behalf of Zellner, tbe relator, for a mandamus to tbe Court of Claims to compel them to allow an appeal from a decree against him in that court. Tbe case is tbis: Tbe relator was tbe owner of thirty bales of cotton, stored in a warehouse in Macon, Georgia; that on or about tbe 21st of February, 1866, a special agent of tbe Treasury Department seized and carried away tbe same, which was afterwards shipped by another agent of that Department to tbe city of New York, and there sold by Simeon Draper, an agent of tbe Government, for $3,076.71, after deducting all charges and expenses. On tbis state of facts tbe relator applied to tbe Court of Claims for a judgment against tbe Government, in bis favor, to tbis amount.
*138 The court, on full consideration, denied the claim and dismissed the petition 5 whereupon be prayed an appeal from the decree of dismissal, which was refused. The single question presented is, whether or not the relator was entitled to an appeal.
The act of 24th February, 1855, (10 U. St., 612,) amended by the act of 3d March, 1863, (12 ib., 765,) conferred jurisdiction upon the Court of Claims “ to hear and determine all claims founded upon any regulation of an Executive Department, or upon any contract, express or implied, with the Government “and also all claims which maybe referred to said court by •either House of Congress.” The act of 3d March, 1863, conferred jurisdiction, in addition to the above cases, “ of all set-offs, counter-claims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever, on the part of the Government, against any person making claim against the Government in said court.” The fifth section of this act of 1863 provided “ that either party may appeal to the Supreme Court of the United States from any final judgment or decree which may hereafter be rendered in any case by said court wherein the amount in controversy exceeds three thousand dollars, under such regulations as the Supreme Court may direct.”
The act providing for the collection of abandoned property in insurrectionary districts, passed March 3, 1863, under which the property in question was seized, provided, in the third section, that “ any person claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the, proceeds thereof in the Court of Claims; and, on proof to the satisfaction of the said court, of the ownership of said property, of his right to the proceeds thereof, and that he has never given any aid or comfort to the present rebellion, to receive the residue of proceeds, after deducting expenses,” &c. This act contains no provision for an appeal from the judgments or decrees of the court. It was passed by Congress on the same day that the act of 1863, above referred to, was passed, re-organizing the Court of Claims, and authorizing it to render judgments against the Government, with the right of either party to appeal to the Supreme Court, as already stated, though it was not approved by the President till nine days afterwards.
It is supposed, as the act concerning abandoned and captured property conferred upon the Court of Claims a new subject of *139 jurisdiction in addition to those previously provided for, and at the same time made no provision for appeals to the Supreme Court from their judgments or decrees, no right of appeal existed in respect to either party, and that the general provision in the fifth section of the Act of March 33,18G3, re-organizing the court, and conferring what may be called its generaljurisdiction, cannot be invoked in this case. We cannot agree to this view. The language of the section is general: Either party may appeal to the Supreme Court of the United States from any final judgment or decree which may hereafter be rendered in any case by said court.” This court was organized as a special judicial tribunal to hear and render judgment in cases between the citizen and the Government; the subjects of its jurisdiction were defined in the act, and, generally, the mode of conducting its proceedings, subject, of course, to such alterations and changes as Congress from time to time might see fit to make. The subjects of its jurisdiction could be enlarged or diminished, but this would not disturb or in any way affect the general plan or system of its organization. If new or additional subjects of jurisdiction were conferred, the effect would be, simply, to increase the labors of the court, the cases to be heard and determined under the existing organization.
In the regulation of the jurisdiction of the United States circuit and district courts, by the judiciary act of 1789, the twenty-second section of that act, together with the second section of the act of 3d March, 1803, provided for writs of error and appeals from all final judgments or decrees of the district to circuit courts, and from all final judgments and decrees of the circuit to the Supreme Court. The jurisdiction of both these courts has been enlarged, from time to time, since this organization ; and it has never been doubted but that the judgments or decrees founded upon these new subjects of jurisdiction were liable to the operation of these general provisions in respect to writs of error and appeals. The case of the United States v. Ferreira, (13 How., 40,) illustrates the principle.
The power to hear and adjudicate upon certain claims under the treaty of 1819, between this Government and Spain, was conferred upon the district judge of the United States for the northern district of Florida. In a case before him he rendered a decision against the Government, from which the United States district attorney appealed to the Supreme *140 Comí, which, it was admitted, would have been regular if the adjudication had been rendered by the judge as a court, and the decree, that of the district court. But it was held that the power was not conferred upon the judge in his judicial capacity, sitting as a court, but upon him as a commissioner,- and, hence, an appeal under the twenty-second section of the judiciary act would not lie. The same principle is stated in (3 Wall., 675,) United States v. Circuit Judges.
The case of the United States v. Nourse, (6 Peters, 470, 494-5,) relied upon against this motion, was a case of special and summary jurisdiction, under the Act of 15th May, 1820, in which the mode of proceeding is particularly pointed out, and in which a special mode of tailing an appeal is prescribed, and in respect to the proceedings before the district judge they could be taken at chambers as well as in court.
As it respects the act of Congress in question no special proceedings are prescribed to the Court of Claims or to the claimant. Any person claiming to be the owner of abandoned or captured property within the meaning of the act may, at any time within two years after the suppression of the Rebellion, present his claim for the proceeds to the Court of Claims, and they are to proceed, in the usual way, to hear and adjudicate upon the question of ownership and right to the proceeds, according to the proofs and law of the case.
We are referred to the first section of the Aet 25th June, 1868, (15 Stat. L., p. 75,) as bearing upon this motion, which provides for the allowance of an appeal by the Government from all final judgments of the Court of Claims adverse to it, whether such judgment shall have been rendered by virtue of the general or any special power of said court. We can only say that in the view the court have taken of this case this section has no application to it. The judgment has not been rendered by the court under any special power conferred; and it is not pretended that the effect of it is to take away the right of the claimant to appeal from a judgment under the general jurisdiction of the court.
Motion for peremptory mandamus granted.