Nott, J.,
delivered the following dissenting opinion:
The plain and simple question in this case is whether the statute of limitations (Rev. Stat., § 1069) applies to that subject of jurisdiction known as the captured property cases.
In Haycraft's Case (22 Wall., 81) the counsel for the claimant asked the same question, and the Supreme Courtanswered that it did not.
The argument which was addressed to the Supreme Court in that case will be found set forth (not in extenso) in 10 C. Cls. R., 95-104. It is an argument of extraordinary ingenuity, ability, learning, and earnestness. There have been several attempts since then to change the trust into implied contract, and to change the limited responsibility of the Government as a trustee into the more extended responsibility of a stakeholder or bailee, but every idea and argument and illustration which has been advanced will be found more fully, and forcibly set forth in the claimant’s argument in Haycraft.
The object of that argument was to establish the position that the holding of the Government was an implied trust and the character of the Government that of a stakeholder or bailee, as to which the law implies a contract to pay over the money to the rightful owner; and hence that the six years’ statute of limitations was applicable to such cases. The Supreme Court answered that no implied contract existed; that the character of the Government was that of a trustee, and that such cases did not come within the statute of limitations.
The statute of limitations was made for the protection of the Government, and is applicable to all cases where the Government has incurred a personal liability. The jurisdiction period of two years prescribed by the Abandoned or Oaptured Property Act (12 Stat. L., § 3, p. 820) was made for the protection of claimants and to enable them all to come before the court at the same time, to the end that each might defend his own share of the fund from the adverse demands of adverse claimants. The two systems have been administered as distinct systems without one single exception until the present day; and how completely distinct they have been kept will be best understood from the following illustration :
The Act 3d March, 1863 (12 Stat. L., 765), which reconstituted this court and created the statute of limitations (§ 10), *425 likewise created the right of appeal (§ 5) and a liability for interest (§ 7). It is expressly provided “ That every claim against the United States cognizable by the Court of Claims shall be forever barred unless the petition be filed ” within six years ; but it is also expressly provided “ That in all cases of final judgments by said court” in favor of the claimant nterest thereon at the rate of 5 per cent, shall he allowed.” Many judgments in favor of claimants were recovered in the captured property cases, and many, and for large amounts, were suspended by appeals to the Supreme Court; yet in no case was interest upon such a judgment ever allowed or paid. If there was a personal liability on the part of the.Government in those cases as to which it can invoke the protection of the statute of limitations, then there was a personal liability for interest pending an appeal on those judgments, which, certainly,’ in law, in equity, and in good conscience, it is still bound to pay, as is very clearly shown - by our brother, Mr. Justice Scofield, in Hobbs's Case (19 C. Cls. R., 220).
The case of Zellner (9 Wall., 244) was the first captured cotton case which came before the Supreme Court,* and there are expressions in the opinion which have frequently been miscited and misunderstood. The decision was rendered in proceedings to obtain a mandamus, and relates to the single question of there being a right of appeal in that class of cases. The language of the opinion is to be construed in connection with that fact. Several years afterward the Elgee Cotton Case (10 C. Cls. R., 181) came before the court, a case elaborately argued on behalf of the three adverse claimants, and there it was said of suits under the abandoned or captured property act: “ That *426 statute (act March 12, 1863) furnishes a complete system for the prosecution of claims under it, and defines the extent of the rights which those who claim an interest in the proceeds of property captured or abandoned during the civil war may assert against the Government.” The two decisions are not inconsistent. The former relates to a matter of practice and procedure, as to which it holds the general provisions of law governing practice and procedure applicable; the latter to rights and equities, as to which it holds the abandoned or captured property act to constitute a complete system.
What, then, is the condition of the claimant’s case!
On the 20th August, 1868, Robert Erwin was the equitable owner of a fund in the Treasury, of which the equitable title had never been divested from himself, being' then held by the Government as his trustee. On that day he might have instituted a suit for the fund, but on that day the jurisdictional period for instituting such suits expired; A, provision of law confining jurisdiction to a certain period no more affects the party or the cause of action than a provision of law confining jurisdiction to certain territory. Therefore Erwin’s right to the fund did not expire with the right of the court to entertain his case. The effect of the statute was simply that on that day as to such cases the door of the court was shut. 1
On the 5th February, 1877, Congress reopened the door by passing the private act (19 Stat. L., 509). The original abandoned or captured property act said, that the door should stand open for two years; the private act set no limitation of the kind, but leaves it open still, and still continues to declare that “ the Court of Claims may take jurisdiction ” of the claim. The private act does not recreate the claim; it does not validate it; it does not remove any presumption of payment from it; it simply opens the door of the court and allows whoever may be entitled to do so to bring the claim in.
Why, then, should not the claim be heard ? The grant ot jurisdiction has not expired ; the private act has not been repealed ; it still continues to say “ the Court of Claims may take jurisdiction under the provisions of the act ofMarch 12,1863,” “of the claims of Robort Erwin ;” why, then, should not the Court of Claims take jurisdiction and adjudge the case.
The counsel for the Government answers that the general statute of limitations applies to this demand and bars the suit.
*427 If the statute of limitations applies so as to preclude a trial upon the merits, it must apply not to the door of jurisdiction, but to the claim itself. Statutes of limitation are statutes of repose which do not extend to courts nor affect jurisdiction, but which attach to a debt or demand a presumption of payment, and operate to extinguish the thing itself as completely as if payment had been made. Therefore, if the statute of limitation applies to this claim, neither Eobert Erwin nor his as-signee, nor any other person, can ever assert a right to the fund derived from his cotton. All other claimants can; but this claim must be considered in law as actually paid and extinguished. It is conceded that the claim was not so extinguished when the private act was passed; it is conceded that none other of the thousands of claims which are still outstanding upon the captured property fund is presumptively or legally extinguished by the statute of limitations. Why, then, is this ? How is it possible that Congress by passing an act, without the solicitation of the legal owner of the claim, the present claimant, authorizing a court to take jurisdiction of a case, and nothing more, can have attached to the claim itself another statute not previously applicable to it, which should in time work out a legal presumption of payment and an absolute ex-tinguishment of the claimant’s rights «
If it be asked whether this tmng can go on forever, the answer seems a very plain one. Congress did not here pass a general act, nor an act affecting a class of claims, but made a grant of special jurisdiction for the benefit of a single, isolated case; the act of grace and favor did not confer a right, but provided .a remedy; Congress can take away the remedy at any time without trenching upon the claimant’s rights.
The counsel for the claimant has supposed that in the administration of the abandoned or captured property act the fund in the Treasury was treated by this court as a fund in equity, and the counsel is right in his supposition. Considering that it dealt with millions and must involve some of the most perplexing questions that could possibly be brought befóte a court, that act was in one particular probably the most extraordinary statute that was ever enacted. All that relates to the jurisdiction and duties of the court, and to the rights and disabilities of the parties, is to be found in nine lines which *428 are thrust into a section primarily relating to the bonds and books of account of agents of the Treasury. The judges who had to bear the heat and burden of that day in determining principles, in devising remedies, in framing a system which should be commensurate with the necessities of the situation— that is to say, the judges who administered the statute from the case of Tibbitts, in 1 O. Cls. It. (p. 169), to-the case of Boyd, in the ninth volume (p. 419), had an absolutely novel subject of jurisprudence assigned to them without one word of statutory guidance to direct them and without a precedent to be gathered from all the courts in the world.*
Whatever may be thought of the wisdom of their conclusion, one thing is incontrovertible, and that is, that they, eventually, believed the fund in the Treasury to be a fund in equity, and that they exercised in regard to it whatever power of a court of equity might be necessary to protect the fund. The interlocutory proceedings (4 C. Cls. R., 486; 5 id., 645) and the final decree (7 id., 605) in the Elgee Cotton Case, and the decree in the case of Rothschild (6 id., 244) will illustrate to any lawyer with any knowledge of equity jurisdiction that the-court was dealing with rights and remedies which belong to the discretionary powers of a court of equity, and which are not the rights and remedies that come within the inflexible jurisdiction of a court of law. Some attempts have been made to show that courts of law have dealt with implied trusts in some such way, but the only authorities that could be found were Bacon’s Abridgment and Beeve’s History of the Common Law, and they, unhappily, related to a time when the court of chancery did not exist as a-court of equity, and when the system of equity jurisprudence was not yet devised.
*429 But I do not regard the statute of limitation as necessarily exclusive of equity cases. I place my conclusion here entirely upon the ground that the private act granted a remedy; that the remedy was not limited as to time, aud that there is no law which attaches to this claim a presumption of payment.
Weldon, J., was prevented by illness from taking part in the decision.

 The following- is the order in which the decisions were rendered that hear upon the question under consideration. In Zellner and Anderson the opinions were road on the same day.
COURT OE CLAIMS.
Term.
1864. Tibbetts, 1 C. Cls. R., 169.
1866. Tuner, Sid.,.390.
1868. Woodruff, 4 id., 486.
1869. Woodruff# Gamp, 5 id., 645.
1870. Rothschild, 6 id., 204.
1870. Wylie, 6 id., 295.
1871. Woodruff, 7 id., 605.
1871. Price, 7 id., 567.
1873.Boyd, 9 id., 419.
SUPREME COURT.
Term.
1869. Zellner, 9 Wall., 244.
1869. Anderson, 9 id., 56.
1869. Padelford, 9 id., 531.
1871. Klein, 13 id., 128.
1874. JSlgee Cases, 22 id., 180,184.
1875. Intermingled Cotton' Cases, 92 U. S. R., 551.

 There a.re other curious facts connected with this branch of jurisdiction. The abandoned or captured property fund existed before the abandoned or captured property act. (See Goodman’s Case, 14 C. Cls. R., 547, where the history of the fundís given.) It was not covered into the Treasury until after the Joint Resolution, 30th of March, 1868 (15 Stat. L., and p. 251); no appropriation was ever made by Congress for the payment of a judgment to be satisfied out of it; and it continued to be treated as a separate fund, subject to the terms of the original act; until the revisers by incorporating that act into the Revised Statutes repealed it; and then the fund was placed among the permanent appropriations (Rev. Stat., _§ 3689), the statute expressly declaring that the permanent appropriation is "For the return of proceeds from the sale of captured and abandoned property to the owners thereof.”