UNITED STATES et al. v. DILLIN.

(Circuit Court of Appeals, Sixth Circuit. March 16, 1909.)

No. 1,857.

1. STATUTES (§ 241*)—CONSTRUCTION—PENAL STATUTES.

Though penal laws are to be strictly construed, they cannot be given a construction so strict as to render them ineffective and defeat the manifest purpose of their enactment.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 322; Dec. Dig. § 241.*]

2. UNITED STATES (§ 44*)—DEFAULTING OFFICERS—ARREST ON DISTRESS WARRANT.

Rev. St. § 3625 et seq. (U. S. Comp. St. 1901, pp. 2418, 2419), which provide that, whenever an officer who has received public money before it is paid into the treasury of the United States fails to render his account or pay over the same as required by law, a distress warrant shall be issued by the Solicitor of the Treasury against the delinquent officer and his sureties, which shall be levied on his property, and if his goods and chattels shall not be sufficient to satisfy the warrant it may be levied on the person of such officer, who may be committed to prison, cannot be construed to apply only to persons who are officers of the government at the time the warrant is issued, so as to exclude from their operation officers who are found delinquent at the close of their terms of office.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 32; Dec. Dig. § 44.*]

3. UNITED STATES (§ 44*)—DEFAULTING OFFICERS—IMPRISONMENT ON DISTRESS WARRANT—DEFENDANT AT LARGE ON BAIL.

The fact that a person is under indictment for embezzlement of public money as an officer of the United States and has given bail does not exempt him from being imprisoned on a treasury distress warrant, for the collection of such indebtedness, where he is in the custody of the marshal of the same court, which can order his production for trial on the indictment at any time, and where neither the court nor the prosecuting officers object.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 32; Dec. Dig. § 44.*]

4. CONSTITUTIONAL LAW (§ 306*)—DUE PROCESS OF LAW—DEFAULTING OFFICERS—IMPRISONMENT ON DISTRESS WARRANT.

A warrant of distress, issued by the Treasury Department against the property and person of a defaulting public officer, under Rev. St. § 3625 et seq. (U. S. Comp. St. 1901, pp. 2418, 2419), upon which he is imprisoned, does not deprive him of his liberty without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 928; Dec. Dig. § 306.*]

5. UNITED STATES (§ 44*)—IMPRISONMENT FOR DEBT—SCOPE OF FEDERAL STATUTE—IMPRISONMENT OF DEFAULTING OFFICER ON DISTRESS WARRANT.

Rev. St. § 990 (U. S. Comp. St. 1901, p. 709), which provides that no person shall be imprisoned for debt in any state on process issuing from a court of the United States, where by the laws of such state imprisonment for debt has been or shall be abolished, has no application to imprisonment under a distress warrant issued by a department under authority of a specific act of Congress against the property and body of a defaulting officer of the government.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 44.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

For opinion below, see 160 Fed. 751.

A. M. Tillman, U. S. Atty.

Before SEVERENS, Circuit Judge, and KNAPPEN and SANFORD, District Judges.

SANFORD, District Judge. This is an appeal by the government from a judgment of the Circuit Court discharging the appellee, Joseph W. Dillin, under a writ of habeas corpus, from imprisonment under a warrant of distress issued by the Solicitor of the Treasury. The said Dillin was for several years prior to June 30, 1907, the surveyor of customs for the port of Nashville, Tenn. At that date his term of office expired, and his successor qualified and took charge of the office. As a result of an examination of Dillin's accounts, it was ascertained in September, 1907, that he was indebted to the United States in the sum of $6,898.32, or, after allowing him all proper credits, in the net sum of $6,502.30.

At the October term, 1907, of the United States Circuit Court for the Middle District of Tennessee, Dillin was indicted for the embezzlement of said sum of $6,898.32 and for failure and refusal to properly account therefor. Immediately after indictment he was arrested and gave bond for his appearance at the April term, 1908, at which term his case was continued upon his application to the October term, 1908. On March 31, 1908, the Solicitor of the Treasury issued a warrant of distress, directed to the United States marshal for the Middle district of Tennessee, reciting that Dillin had failed to pay over the said sum of $6,502.30, and commanding him, in pursuance of section 3625 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2418), to proceed immediately and collect said sum by distress and sale of the goods and chattels of Dillin, and, if there should not be found sufficient goods and chattels to satisfy said sum, to commit the body of Dillin to prison. The marshal, having undertaken to execute this warrant and being unable to find any goods and chattels of Dillin to satisfy the same in whole or in part, committed him to prison.

Thereupon, on April 10, 1908, Dillin applied to said Circuit Court for a writ of habeas corpus, alleging that he was held in imprisonment by the marshal under the warrant of distress and was illegally restrained of his liberty (1) because he was not, either then or at the time the warrant was issued or served, "an officer of the United States government, and did not hold the position of collector of customs or any other position under the government"; and (2) because, having been indicted in said court, and having been arrested and given bond for his appearance therein, he was held by said court "in its exclusive custody and jurisdiction." Upon this petition a writ of habeas corpus was issued directed to the marshal, who made return thereto, stating that Dillin was held in prison in pursuance of the distress warrant and under section 3627 of the Revised Statutes (U. S. Comp. St. 1901, p. 2419).

Upon the hearing, the court being of the opinion that as Dillin was no longer a collector of customs, he was, therefore, not amenable to

the warrant of distress, discharged him from further imprisonment under and by virtue thereof. From the judgment discharging Dillin from custody the United States and the marshal were granted an appeal to this court.

We are of the opinion that the judgment of the Circuit Court discharging Dillin from custody was erroneous.

The provisions of law under which this treasury distress warrant was issued originated in Act May 15, 1820, c. 107, § 2, 3 Stat. 592, entitled "An act to provide for the better organization of the Treasury Department." This was amended in some matters of detail by Act May 29, 1830, c. 153, 4 Stat. 414, re-enacted in 1873 in section 3625 et seq. of the Revised Statutes, and further amended by Act Feb. 27, 1877, c. 69, 19 Stat. 249, and Act July 31, 1894, c. 174, § 4, 28 Stat. 206 (U. S. Comp. St. 1901, pp. 2418, 2419).

The provisions of the Revised Statutes, as amended, in so far as now material, are as follows:

"Sec. 3625. Whenever any collector of the revenue, receiver of public money or other officer who has received the public money before it is paid into the treasury of the United States, fails to render his account, or pay over the same in the manner or within the time required by law, it shall be the duty of the proper auditor to cause to be stated the account of such officer, exhibiting truly the amount due to the United States, and to certify the same to the Solicitor of the Treasury, who shall issue a warrant of distress against the delinquent officer and his sureties, directed to the marshal of the district in which such officer and his sureties reside. * * *

"Sec. 3626. The warrant of distress shall specify the amount with which such delinquent is chargeable and the sums, if any, which have been paid.

"Sec. 3627. The marshal authorized to execute any warrant of distress shall. by himself or by his deputy, proceed to levy and collect the sum remaining due, by distress and sale of goods and chattels of such delinquent officer. * * * If the goods and chattels be not sufficient to satisfy the warrant, the same may be levied upon the person of such officer, who may be committed to prison, there to remain until discharged by due course of law.

"Sec. 3628. If the delinquent officer absconds, or if goods and chattels belonging to him cannot be found sufficient to satisfy the warrant, the marshal or his deputy shall proceed, notwithstanding the commitment of the delinquent officer, to levy and collect the sum which remains due by such delinquent, by the distress and sale of the goods and chattels of his sureties. * * *

"Sec. 3630. For want of goods and chattels of a delinquent officer, or his sureties, sufficient to satisfy any warrant of distress issued pursuant to the foregoing provisions, the lands, tenements, and hereditaments of such officer and his sureties, or so much thereof as may be necessary for that purpose, * * * shall be sold by the marshal of such district or his deputy."

While it is true that, as stated in the opinion of the court below, no case seems to have arisen under these provisions of law since 1855, on the other hand, the re-enactment in 1873 of the provisions of the act of 1820, and their amendment so recently as 1877 and 1894, clearly show the intention of Congress that they should not be regarded as obsolete, but should remain in full force as a summary process for the collection of moneys due the government by delinquent officers.

Although, of course, if these provisions be valid, their enforcement is not to be denied by the courts on account of the drastic nature of the remedies given to the government, such considerations being for the legislative department alone, it may be noted, as bearing upon the summary and apparently severe character of such remedies, that under a

provision of the act of 1820 (sections 4 and 5), re-enacted in section 3636 of the Revised Statutes, any person aggrieved by such distress warrant may, upon preferring a bill of complaint to a District Judge and the execution of a proper bond, obtain an injunction to stay proceedings on such warrant altogether, or for so much thereof as the nature of the case requires, under which provision the District Judge may inquire into the question whether the officer is indebted to the government as recited in the distress warrant (Murray's Lessees v. Hoboken Land & Improvement Co., 18 How. 272, 284, 15 L. Ed. 372) and may enjoin the enforcement of the warrant, either in whole or in part, if it appears that he is not indebted in the amount claimed by the treasury officials, as equity may require (United States v. Nourse, 6 Pet. 470, 491, 8 L. Ed. 467; Armstrong v. United States, Gilp. 399, Fed. Cas. No. 548. Whether, even where the debt claimed is admittedly due, the delinquent officer can, upon proof of his inability to pay the debt, be discharged from imprisonment under the distress warrant by the President, under the provisions of Act March 3, 1817, c. 114, 3 Stat. 399, re-enacted in section 3472 of the Revised Statutes (U. S. Comp. St. 1901, p. 2319), or whether, as was said in an early opinion of the Attorney General, this statute does not authorize discharge from imprisonment under such distress warrant, but the President may nevertheless discharge him if he confess judgment and a capias issue (2 Op. Atty. Gen. 285), is not entirely clear.

1. We cannot, however, agree with the court below in sustaining the contention that under the provisions of the Revised Statutes above quoted a distress warrant can be issued and executed only where the delinquent person is still an "officer" of the government at the time of such issuance and execution, and that Dillin was hence not amenable to the distress warrant; his term of office having previously expired.

Such a construction is, in our opinion, in conflict with both the spirit and the letter of the statutes. These provisions were intended to afford to the government a summary and expeditious method of collecting the debt due to it from a delinquent officer, without the delays incident to an ordinary suit and the danger of being unable at the end of such litigation to reach any property in satisfaction of the judgment, by enabling the government, through the issuance of a distress warrant on the discovery of the delinquency, to promptly levy upon the property of the delinquent and his sureties, with the added compulsion of imprisonment of the delinquent to induce the disclosure and surrender of property that might otherwise be concealed.

It appears from the first clause of section 3625, introducing and explaining the subsequent provisions, that it was intended that a distress warrant should issue "whenever" any officer who has received the public money before it is paid into the treasury fails to render his account or pay over the same as required by law. There is no word or phrase which indicates any intention to cut off the right of the government to the issuance and execution of such distress warrant by the expiration of the term of office of the delinquent; it being clear that in the subsequent provisions authorizing the issuance of "a warrant of distress against the delinquent officer and his sureties," the "distress and sale of the goods and chattels of such delinquent officer," and the

levy of the warrant "upon the person of such officer," the words "delinquent officer" and "such officer"—upon which the argument in behalf of the appellee is mainly rested—were used merely as convenient terms of description, referring back to the class of delinquent officers described in the introductory clause of section 3625, and not as words of time, describing the then condition of such delinquent and limiting the application of these provisions to a person who was an officer at the time.

Frequently, if not usually, the delinquency of an officer cannot be ascertained and stated until a final examination has been made of his accounts after his term of office has expired. Section 3622 of the Revised Statutes provides that "every officer" of the United States who receives the public money shall forward his accounts for settlement, with necessary vouchers, within 10 days after the expiration of each successive month. It follows that, as an officer whose term has expired would have until the 10th day of the succeeding month within which to forward his accounts for settlement (unless, indeed, by a process of reasoning similar to that upon which the appellee relies, it is to be held that, being no longer an "officer," this section no longer applies, and does not require him to forward his accounts for settlement at all), he would not be delinquent, under section 3625, in failing "to render his account, or pay over the same within the manner or in the time required by law," until after the expiration of the first 10 days of the succeeding month. Thus the appellee's argument would lead to the anomalous result that the very statute intended to afford the government a summary process for collecting the amount found to be due when the officer became delinquent could never in such case become operative, because he did not become delinquent under the law until after the provision for the issuance of the distress warrant had ceased to apply; that is, the very condition which would render the statute applicable on the one hand would, at the same instant, defeat its application on the other. And, of course, not merely would he himself, upon this argument, be exempt from imprisonment under the distress warrant by reason of the expiration of his term of office, but it would likewise follow, by the same process of reasoning, that his property could not be levied on in satisfaction of the distress warrant, nor could that of his sureties. In other words, the provisions of the statute would in such case be rendered meaningless and of no effect, and its purpose entirely defeated.

Statutes, however, are to be construed according to their natural and reasonable effect, and a construction leading to absurd consequences is to be discarded. United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278; Oates v. National Bank, 100 U. S. 239, 244, 25 L. Ed. 580; Holy Trinity Church v. United States, 143 U. S. 457, 460, 12 Sup. Ct. 511, 36 L. Ed. 226. And "though penal laws are to be strictly construed, yet the intention of the Legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the Legislature." United States v. Wiltberger, 5 Wheat. 76, 95, 5 L. Ed. 37; United States v. Morris, 14 Pet. 464, 10 L. Ed. 543; United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080; Johnson v.

Southern Pacific Co., 196 U. S. 1, 17, 25 Sup. Ct. 158, 49 L. Ed. 363. There is, furthermore, "a presumption against a construction which would render a statute ineffective or inefficient." Bird v. United States, 187 U. S. 118, 124, 23 Sup. Ct. 42, 47 L. Ed. 100.

Applying these principles of statutory construction, we think it clear that these statutes should not be so construed as to defeat their obvious purpose and render them ineffective and inapplicable in the cases to which they were manifestly intended to apply, but that their provisions should be construed, in harmony with both their letter and spirit, as remaining in full force and effect so long as the defaulting officer is delinquent and not otherwise discharged by law from the debt or imprisonment.

This construction is furthermore supported by the fact that in most, if not all, of the cases in which the enforcement of these statutes has been involved, it appears to have been tacitly recognized, both by counsel and by the courts, that the expiration of the term of the delinquent officer did not in any way affect the validity of the distress warrant. In at least five cases in which these statutes came before the courts between 1831 and 1855, it affirmatively appeared that the distress warrants had not been issued until after the term of office of the delinquent officers; in two of these cases the warrant was held valid, and enforced in whole or in part; in three, the warrant was held invalid for other reasons; but in none of them was the expiration of the delinquent's term of office referred to even incidentally as a ground of invalidity.

In the case of Ex parte Randolph, 2 Brock. 447, Fed. Cas. No. 11,-558—in which Chief Justice Marshall, at circuit, in 1833, delivered an opinion, upon which the appellee largely bases his contention—the facts were these: Randolph, a lieutenant in the United States Navy, who had been officiating as acting purser of the frigate Constitution, supplying a vacancy caused by the death of the regularly commissioned purser on the Mediterranean station, was, on his return to the United States, upon a restatement of his account, alleged to be largely indebted to the United States, and a treasury distress warrant was issued against him as "late acting purser of the frigate Constitution." Having been arrested and held in custody under this warrant, he applied for a writ of habeas corpus; his first objection to the warrant being that he was not one of the persons upon whom the act of 1820 was designed to operate. It was held by the Circuit Court that he should be discharged from custody, but in neither of the opinions delivered by the two judges was the fact that he was no longer acting purser when the warrant was issued referred to as a reason for such holding. In the separate opinion delivered by Chief Justice Marshall, after stating "that the Legislature has not passed any act which in its construction is to be more strictly confined to the letter," and "that no debtor than one who was properly designated by the term officer was contemplated by the act," and after quoting the language of the warrant designating Randolph as "late acting purser of the United States frigate Constitution," he held, without referring to the fact that Randolph had ceased to be such "acting purser" at the time the warrant was issued, that he

did not come within the provisions of the act of 1820 because he was a mere "acting purser" in the navy and not under bond, and the act only applied to those commissioned officers to whose hands public money is intrusted and who have given official bonds for the faithful discharge of the duties of their office. Obviously, if Chief Justice Marshall had been of the opinion that the statute did not apply because of the fact that Randolph had ceased to be acting purser when the warrant was issued, this would also have been stated as one of the grounds of his opinion, and from his silence on this point it is clearly to be inferred that he was of the opinion that, if Randolph had been within the class of officers contemplated by the statute at the time his delinquency occurred, the fact that he had ceased to hold such position when the warrant was issued would have been entirely immaterial. His opinion is, therefore, by necessary inference, strongly in favor of the construction of the statute which we have adopted.

In the case of United States v. Nourse, 4 Cranch, C. C. 151, Fed. Cas. No. 15,901 (1831)—the facts of which more fully appear in the opinion in the case of United States v. Nourse, 6 Pet. 470, 8 L. Ed. 467—while the Circuit Court affirmed a judgment of the District Court enjoining the collection of the distress warrant that had been issued to collect a balance claimed to be due to the government by Nourse, who was described in the warrant as "late Register of the Treasury" (6 Pet. 472 [8 L. Ed. 467]), it appears that the injunction was granted solely on the ground that Nourse was not in fact indebted to the United States upon a proper settlement of his account; and while the judgment of the Circuit Court was afterwards reversed by the Supreme Court on the ground that the government had no right of appeal from the District Court to the Circuit Court, yet in none of the pleadings or opinions at any stage of the proceedings was the fact that Nourse had ceased to be Register of the Treasury when the warrant was issued referred to in any way as affecting its validity.

Similar proceedings were had in the case of United States v. Cox, 11 Pet. 162, 164, 9 L. Ed. 671 (1837), in which a warrant had been issued against Cox "as late receiver of the public moneys," and an injunction appears to have been granted by the District Court upon the sole ground that Cox was not indebted as claimed by the government, without referring to the fact that he was not in office at the time the warrant was issued; the appeal from the District Court to the Supreme Court being likewise dismissed for want of jurisdiction.

In the case of Armstrong v. United States, Gilp. 399, Fed. Cas. No. 548 (1833), after Armstrong's commission as navy agent on the port of Lima, Peru, had been revoked by the President, and after his return to the United States, on a settlement of his accounts by the accounting officers of the treasury, a certain balance was claimed to be due from him and a warrant of distress was issued under the act of 1820. He thereupon filed his bill for an injunction on the ground that he was not indebted as claimed. It was held that the amount claimed by the government was due in part, but not entirely, and the court thereupon enjoined the collection of the warrant for more than the amount thus found to be due, but dissolved the temporary writ that had been grant-

ed as to the collection of the sum found to be due, thereby permitting the warrant to be levied upon his property for the amount found to be due, although at the time of its issuance he had ceased to be in the government service.

And, finally, in the case of Murray's Lessees v. Hoboken Land & Improvement Company, 18 How. 272, 15 L. Ed. 372, decided by the Supreme Court in 1855, in which there was involved the validity of a sale of the land of one Swartwout made by the marshal under a treasury distress warrant, although it appeared that Swartwout had been collector of customs for eight years prior to March 29, 1838, and that the warrant to collect the balance claimed by the treasury to be due had not been issued until after an auditing of his accounts on November 10, 1838, it is stated in the opinion of the court that it was not denied that the proceedings which preceded the issuance of the warrant were in conformity with the requirements of the act of 1820, and the constitutionality of the act and the validity of the sale under the distress warrant were affirmed by the court without referring to the fact that the warrant had been issued when Swartwout was no longer in office.

The inference is therefore irresistible that in all of these cases it was recognized both by counsel and by the courts that, where the distress warrant otherwise came within the terms of the act of 1820, its validity was not affected by the fact that the delinquent was no longer in office at the time it was issued or executed; and Congress, in thereafter re-enacting in 1873 the provisions of the act in the Revised Statutes, may well be presumed to have intended that its terms should continue to be construed and applied in like manner.

2. It is also contended that as Dillin, prior to his arrest under the distress warrant, had been arrested and given bond to appear before the United States Circuit Court to answer an indictment for embezzlement, he was, at the time, in the exclusive jurisdiction of said court, and that his imprisonment under the distress warrant is hence illegal, in that it deprives said court of its jurisdiction over him and will defeat the right of said court to bring him before it for trial under the indictment. In support of this contention reliance is had upon the "principle of universal jurisprudence," stated in the opinion in the case of Taylor v. Taintor, 16 Wall. 366, 370, 21 L. Ed. 287, "that when jurisdiction has attached to a person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function."

The scope of this principle is, however, defined by the recent case of Beavers v. Haubert, 198 U. S. 77, 87, 25 Sup. Ct. 573, 49 L. Ed. 950, in which the appellant, Beavers, who, while under indictment and bail in the United States Circuit Court for the Eastern District of New York, had been, by consent of that court, arrested in proceedings instituted by the United States attorney of that district and committed for trial to the District of Columbia to answer an indictment there, likewise insisted, in habeas corpus proceedings, that his second arrest and commitment were void as an unlawful interference with the jurisdiction of the Circuit Court in New York, and likewise relied upon the principle announced in Taylor v. Taintor, above quoted. This contention was,

however, overruled. The court, after quoting the principle stated in Taylor v. Taintor, said:

"But this is primarily the right of the court or sovereignty, and has its most striking examples in cases of extradition. * * * This case establishes that the sovereignty where jurisdiction first attaches may yield it, and that the implied custody of a defendant by his sureties cannot prevent. They may, however, claim exemption from further liability to produce him. There is nothing in In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103, which militates against this view. Indeed, that it is the right of the court of sovereignty to insist upon or waive its jurisdiction is there decided (page 126 of 167 U. S. [17 Sup. Ct. 735, 42 L. Ed. 103]). * * * The Circuit Court, as we have seen in the case at bar, consented to the removal of the appellant, and we are not called upon to decide whether the government had the right of election, without such consent, to proceed in New York or the District of Columbia."

Without determining what would be the effect of the principle stated in Taylor v. Taintor, if an attempt had been made to remove Dillin under the distress warrant beyond the territorial jurisdiction of the Circuit Court without its consent, we think it clear that this principle, relating to that which is "primarily the right of the court or sovereignty" rather than a personal privilege of a person arrested, can have no application in the present case, where no attempt has been made to remove Dillin beyond the territorial jurisdiction of the Circuit Court, or other right asserted under the distress warrant inconsistent with the continued exercise by the court of its jurisdiction in the criminal case, where the very officer who holds the prisoner in custody under the distress warrant is the marshal of the court in which the indictment is pending and subject to its orders in respect to the custody of the prisoner, where the government in resisting the prisoner's application for discharge is represented by the United States attorney for the district in which the indictment is pending and charged with its prosecution, and where the court may at any time assert its full and undiminished jurisdiction over the prisoner for the purpose of proceeding with the criminal case, and may at any time, by direct command to the marshal, cause the prisoner to be brought before it for trial.

3. It is also suggested in the brief in behalf of the appellee that the law authorizing the distress warrant is unconstitutional, in that under its provisions the delinquent officer is deprived of his liberty without due process of law. This suggestion, however, is completely met by the case of Murray's Lessees v. Hoboken Land & Improvement Company, above cited, in which lands of a delinquent collector of the customs had been sold under a treasury distress warrant and the validity of the act of 1820 was directly involved, and in which, in a learned opinion delivered in behalf of the court by Mr. Justice Curtis, it was held that both by the common law of England, and by the laws of many of the colonies before the Revolution, and of many of the states after the Declaration of Independence and before the adoption of the federal Constitution, a well-settled diversity had existed in "the law of the land" as between public defaulters on the one hand and ordinary debtors on the other; that what was generally termed a warrant of distress, running against the body, goods, and chattels of defaulting receivers of public money, had been in nearly or quite universal use;

and that the warrant of distress issued under the act of 1820 did not deprive such defaulting officer of either his property or his liberty without due process of law or in violation of the Constitution. And in the case of Davidson v. New Orleans, 96 U. S. 97, 107, 24 L. Ed. 616, it was said that the distress warrant in the Murray Case "was sustained because it was in consonance with the usage of the English government and our state governments in collecting balances due from public accountants, and hence was 'due process of law.'"

4. It is also urged in argument that the appellee could not be lawfully imprisoned under the distress warrant, upon the ground that, imprisonment for debt having been abolished in civil actions in Tennessee, by the act of December 14, 1831, except in cases of fraud (Acts 1831, p. 56, c. 40), his imprisonment under the distress warrant is therefore forbidden by section 990 of the Revised Statutes (U. S. Comp. St. 1901, p. 709), which provides that:

"No person shall be imprisoned for debt in any state, on process issuing from a court of the United States, where, by the laws of such state, imprisonment for debt has been or shall be abolished."

However, section 990, by its very terms, applies only to imprisonment for debt "on process issuing from a court of the United States," and has no application to imprisonment under a distress warrant issued, under the authority of a specific act of Congress, against the property and body of a defaulting officer of the government.

The judgment is accordingly reversed, and the case remanded to the court below, with instructions to dismiss the petition for the writ of habeas corpus and remand the petitioner to imprisonment under the warrant of distress.