## UNITED STATES v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1910.)

### No. 2,000.

1. STATUTES (§ 241*)—RULES OF CONSTRUCTION—PENAL STATUTES.

Although penal laws and statutes in derogation of the common law are to be construed strictly, and not extended beyond their plain meaning, yet the intention of the Legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the Legislature.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 322; Dec. Dig. § 241.*]

2. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION—USE OF CARS NOT COUPLING AUTOMATICALLY.

A car duly equipped with automatic coupling and uncoupling apparatus, but which apparatus is rendered wholly inoperative because the car is loaded with lumber projecting over the uncoupling lever, so as to prevent its operation in the movement of interstate traffic, cannot be held to be a car equipped in compliance with the federal safety appliance act (Act March 2, 1893, c. 196, § 2, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), which makes it unlawful to use any car in such traffic not equipped "with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars."

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*

Duties of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Western District of Tennessee.

Action by the United States against the Illinois Central Railroad Company. Judgment for defendant, and the United States brings error. Reversed.

George Randolph, for the United States.

C. N. Burch, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This suit was brought for the recovery of the penalty of $100 provided by section 6 of the safety appliance act of March 2, 1893 (27 Stat. 532, c. 196), as amended April 1, 1896 (29 Stat. 85, c. 87 [U. S. Comp. St. 1901, p. 3175]), and further amended March 2, 1903 (32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1909, p. 1143]), on account of an alleged violation of section 2 of that act, which makes it unlawful for any common carrier engaged in interstate commerce by railroad "to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The specific violation charged in the declaration is that the car in question was hauled in interstate traffic "*when the coupling and un-*

*coupling apparatus on the 'A' end of said car was inoperative, the said lumber on said car, M., J. & K. C. No. 242, being loaded thereon so as to project out over the uncoupling lever on said end of said car, and prevented the operation of the uncoupling lever of said coupler, thus necessitating a man or men going between the ends of the said car 242 and the car adjacent to couple or uncouple them,* and when said car 242 as above described was not equipped with couplers coupling automatically by impact, and which could be uncoupled without the necessity of a man or men going between the ends of the cars, as required by section 2 of the safety appliance act," etc. The clause following the italicized portion of the allegation quoted from the declaration is not relied upon by the government as a substantive charge, but was inserted rather by way of conclusion or statement of result, there being no claim on the part of the government that the coupling and uncoupling apparatus was inherently defective, the charge being simply that the coupling and uncoupling apparatus was rendered wholly inoperative by reason of the method of loading the lumber on the car.

The defendant demurred to the declaration for the reasons, first, that it "does not charge or state that the coupling apparatus was defective or out of repair, the charge being that the car was loaded with lumber which projected over the uncoupling lever;" and, second, "because the declaration does not charge any facts showing a violation of the safety appliance act referred to." Other grounds of demurrer were assigned, but they are not material upon this review. The court below sustained the demurrer on the grounds above set out, and dismissed the suit. To review this action the United States brings error.

The specific question thus presented is whether a car duly equipped with automatic coupling and uncoupling apparatus, but which apparatus is rendered wholly inoperative by reason of the manner in which the car is loaded while being hauled in the movement of interstate traffic, is within the provisions of the safety appliance act. For the purposes of this hearing we may dismiss from consideration the contention of defendant that the declaration fails to state a case, in that it does not charge that the lumber was willfully or negligently loaded by the defendant company so as to prevent the operation of the lever. St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; United States v. Illinois Central R. R. Co., 170 Fed. 542, 95 C. C. A. 628. In the Taylor Case it was held by the Supreme Court, upon the case there presented, that the safety appliance act has supplanted the common-law rule of reasonable care on the part of the employer as to providing the appliances defined and specified therein, and imposes upon interstate carriers an absolute duty to maintain the appliances in conformity with the requirements of the act. In United States v. Illinois Central R. R. Co., supra, this court, distinguishing, as was thought, the case before it from the Taylor Case, and speaking through Judge Severens, said:

"We are of opinion that, when the government has proved that a car laden for interstate traffic and with defective couplings has been hauled upon its tracks, the railroad company is bound to prove exculpatory facts, such as

that it has used all reasonably possible endeavor to perform its duty to discover and correct the fault."

Therefore, whether liability for failure to maintain safety appliances in conformity with the act is absolute, or is dependent upon negligence, the defendant must equally be regarded, for the purposes of this hearing upon demurrer, as in default, provided its safety appliance equipment shall be held not to conform to the requirements of the act. The precise question presented by this record has not, so far as we have discovered, been passed upon by the courts.

The crucial question whether a car, whose coupling and uncoupling apparatus is by the fault of the carrier rendered wholly inoperative (so far as concerns automatic operation and the dispensing with the necessity of men going between the cars for the purposes of coupling and uncoupling), because so loaded with lumber projecting over the uncoupling lever as to prevent its operation, shall be held to be a car "not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars," depends for its answer upon the degree of strictness with which the safety appliance act shall be construed in the respect here involved. The general rule is well settled that although penal laws and statutes in derogation of the common law are to be construed strictly, and not extended beyond their plain meaning, yet the intention of the Legislature must govern in the construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the Legislature. United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080; United States v. Dillin (Sixth Circuit) 168 Fed. 813, 817, 818, 94 C. C. A. 337. See, also, Frank Unnewehr Co. v. Standard Life & Acc. Ins. Co. (decided by this court December 7, 1909) 176 Fed. 16.

The rule of interpretation we have just referred to has been authoritatively held to apply to the construction of this act in a case involving the effectiveness of the coupling apparatus. See Johnson v. Southern Pacific Ry. Co., 196 U. S. 1, 17, 25 Sup. Ct. 158, 49 L. Ed. 363 (in which an engine was held to be a car within the meaning of the act in question), where it was held that although the coupler there in question would couple automatically with couplers of their own kind, they did not comply with the act unless they could be coupled together automatically by impact by means of the couplers actually used on the respective cars to be coupled. There is no doubt that the requirements of the safety appliance act extend to cars originally equipped with the prescribed coupling apparatus, but which through the default of the railroad company have been used when inoperative by reason of being worn out or out of repair. St. Louis & S. F. R. R. Co. v. Delk (Sixth Circuit) 158 Fed. 931, 86 C. C. A. 95; United States v. Illinois Central R. R. Co., supra; Voelker v. Chicago, M. & St. P. Ry. Co. (C. C.) 116 Fed. 867, 875; Chicago, M. & St. P. Ry. Co. v. Voelker (Eighth Circuit) 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264.

In Philadelphia & R. Ry. Co. v. Winkler, 4 Pennewill (Del.) 387, 56 Atl. 112, it was held that even if the engine tender (which was held to be a car within the meaning of the act) was equipped with

automatic couplers, but was so connected with the "bull-nose" coupler that the coupling with other cars was not made automatically by impact, but so as to make it necessary for men to go between the ends of the cars to couple and uncouple them, the apparatus did not comply with the act of Congress.

We can see no substantial difference in principle, so far as concerns the question here involved, between the case of a coupler temporarily inoperative by reason of being out of repair and one rendered equally inoperative because of the loading of the car in such way that the act of uncoupling could not be accomplished without the necessity of a man going between the cars. The latter case, which is presented here, is equally within the mischief which the statute is designed to prevent.

It is unnecessary to consider the case, suggested by defendant's counsel, of two cars loaded with materials of such length as to rest upon both cars and to extend wholly across the space between; no coupling or uncoupling being intended during transit. The record presents no such case.

We are not impressed by the contention of defendant that the facts stated in the declaration do not make it appear that it was necessary to go between the cars to effect an uncoupling, from the fact that such act could be accomplished by getting on top of the car and removing the lumber from over the lever. So long as the lumber was so loaded "as to project out over the uncoupling lever," and so as to "prevent the operation of the uncoupling lever, * * * thus necessitating a man or men going between the ends of said car * * * and the car adjacent to couple or uncouple them," the automatic apparatus was wholly inoperative, and the situation during the existence of that state of facts was as much fraught with danger to the employé, and as much within the mischief the statute was intended to prevent, as if the car were not equipped with automatic devices.

The judgment of the District Court must accordingly be reversed.