STATE, CONSTANT S. HORTON, Complt. vs. GEORGE T. HUX-
FORD, Alias.

JUNE 26, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1)  Motor Boats.  Statutes.

Pub. Laws, R. I. 1910, cap. 593, requiring that no boat operated in whole or in
part by gas, gasoline, naphtha or other explosive material shall be used upon
the public waters, unless its engine is provided with a sound muffling device,
and providing a penalty for the operation of a boat in violation of its pro-
visions, is not void for vagueness or uncertainty, but the statute is violated
if in the operation of the boat the engine is permitted to exhaust into the
open air and not through the muffler, although the engine is in fact provided
with a muffler as required by the statute.

(2)  Construction of Penal Statutes.

Although a penal statute should be strictly construed, the court cannot so con-
strue it as to deprive it of all force and meaning unless it is in fact meaning
less.

(3)  Construction of Statutes.

In ascertaining the legislative intent the court must consider not only the
occasion and necessity for the law's enactment, but also have reference to the
object intended to be accomplished, and they will never, if avoidable, adopt
a construction which will lead to an absurdity or make it ineffective, and
this applies to the interpretation of penal laws.

CRIMINAL COMPLAINT.  Certified under Gen. Laws, 1909,
cap. 298, § 5.

PARKHURST, J.  This is a criminal complaint in two counts,
brought in the district court of the sixth judicial district,
under Chapter 593 of the Public Laws of 1910.

The first count charges that George T. Huxford, of Provi-
dence, on the eighth day of March, A. D. 1913, "did then and
there in and upon the public waters of this State, adjoining
the sixth judicial district of said State, to wit, the Seekonk
River, near what is known as Red Bridge, operate and use a
certain boat propelled by gas, gasoline, naphtha, and other
explosive material, without having the engine thereof, which
said engine was then and there operated by said gas, gasoline,
naphtha and other explosive material, provided with an

under-water exhaust or a muffler, against the statute in such case made and provided and against the peace and dignity of the State."

The second count charges that the said George T. Huxford, on said eighth day of March, A. D. 1913, "did then and there in and upon the public waters of this State, adjoining the sixth judicial district of this State, to wit, the Seekonk River, near what is known as Red Bridge, operate and use a certain boat propelled by gas, gasoline, naphtha or other explosive material with the cut-out then and there open in such a manner that the engine thereof exhausted through said cut-out into the open air, and not through the muffler with which said engine, operated by said gas, gasoline, naphtha or other explosive material was provided, against the statute in such case made and provided and against the peace and dignity of the State."

The defendant demurred to the complaint on two grounds: (1st) that the complaint states no offense known to the law, and (2nd) that the statute upon which said complaint is founded is void for vagueness and uncertainty. Thereupon the case was certified to this court, under the provisions of Gen. Laws, R. I., 1909, cap. 298, § 5, as follows:

"The above entitled case came on to be heard upon the demurrer of the defendant to the complaint herein, and prior to the trial thereof on its merits, and during said hearing upon demurrer certain questions of law have arisen which, in the opinion of this court, are of such doubt and importance and so affect the merits of the controversy herein, that they ought to be determined by the Supreme Court before further proceedings are had herein. Said questions are as follows:

"(1)   Is Chapter 593 of the Public Laws of 1910 void for vagueness and uncertainty?

"(2)   If the foregoing question is answered in the negative, is said Chapter 593 of the Public Laws of 1910 violated by a person in and upon the public waters of this State, operating and using a certain boat propelled by gas, gasoline, naphtha

or other explosive material, with the cut-out then and there open in such a manner that the engine thereof exhausts through said cut-out into the open air, and not through the muffler, although the said engine was provided with a muffler; as is set forth in the second count of said complaint?

"(3)   If the foregoing first question is answered in the negative, is it sufficient compliance in contemplation of law with the requirements of said Chapter 593 of the Public Laws of 1910, that a boat propelled in whole or in part by gas, gasoline, naphtha or other explosive material has the engine thereof operated by said gas, gasoline, naphtha or other explosive material provided with an under-water exhaust or a muffler, although the person operating or causing to be operated upon the public waters of this State said boat, does not then and there use, or cause said engine to be exhausted through, said under-water exhaust or muffler; or is said operating or causing to be operated a violation of the provisions of said Chapter 593, or of the first section thereof?

"It is, therefore, hereby ordered that said questions be and the same hereby are certified to the Supreme Court for determination.

"Entered as the order of the Court, this 25th day of March, A. D. 1913.

"HOWARD B. GORHAM,

"*Associate Justice.*"

Chapter 593 of the Public Laws of 1910 is as follows:

"AN ACT REQUIRING MOTOR BOATS TO BE PROVIDED WITH EXHAUST OR MUFFLERS.

"*It is enacted by the General Assembly as follows:*

"SECTION 1.   It shall be unlawful to use a boat propelled in whole or in part by gas, gasoline, naphtha, or other explosive material unless the engine thereof operated by said gas, gasoline, naphtha or other explosive material is provided with an under-water exhaust or a muffler.

"Sec. 2.   Any person operating or causing to be operated, upon the public waters of this State, a boat in violation of the provisions of the preceding section shall be punished by a fine of not less than five dollars nor more than twenty-five dollars for each offense.

"Sec. 3.   This act shall take effect on the first day of October, A. D. 1910."

The real question for determination is:   Can a boat of the class designated by the statute, whose engine is provided with either an under-water exhaust or a muffler, legally be used or operated on our public waters unless its engine exhausts through such under-water exhaust or muffler?   Or, to state the question in another way, can the user of such a boat, when operating the same on our public waters, lawfully cut out or disconnect the engine from the under-water exhaust or muffler, thus permitting such engine to exhaust directly into the open air?

It is undisputed by the parties in this case that the engine referred to in the statute is what is known as an internal combustion heat engine in which the fuel used is an inflammable gas or vapor which forms, with air, an explosive mixture, being the type of engine in common use in automobiles and motor boats.   This mixture of gas or vapor and air is successively compressed, ignited and expanded in the engine's cylinder—the heat of combustion being transformed into work—and the burnt gas rejected or exhausted.   In such engines, the working cylinder is also the furnace; and there must be, of necessity, an exhaust in order that the product of combustion, when the force has been expended, shall be allowed to escape, so as to make room for a new charge in the cylinder.   This exhaust causes a loud noise or explosion unless the exhaust is either under water or is otherwise muffled by such devices as are in common use and known as "mufflers."   And it is evident that the purpose of the statute in question is to minimize the noise incident to the use of such engines in boats upon the public waters of this State, and is in line with numerous other statutes of

comparatively recent origin looking to the abatement of the nuisance arising from unnecessary noise.

That said Chapter 593 creates a new offense is perfectly clear. It describes the offense in the first section and provides a penalty for its violation in the second section. We do not find that the statute is void for vagueness or uncertainty. The statute plainly requires that no boat operated in whole or part by such engine as above described shall be used on our public waters unless its engine is provided with one or the other of these sound-muffling devices. Since such devices are absolutely useless and unnecessary on such a boat, unless employed to muffle or deaden the sound of the engine's exhaust, it seems clear that the legislature, in passing the act, intended that such devices should be *used* whenever such a boat should be operated. The statute makes it unlawful "*to use*" such a boat "unless the engine thereof" . . . "is *provided* with an under-water exhaust or a muffler." The time at which the engine must be so provided with such sound-muffling contrivance is when the boat is in use; the boat cannot lawfully be *used* unless the engine *at that moment* is so "provided." But when a boat is in use and its engine is cut off, or disconnected from its muffler or under-water exhaust (by means of a cut-out), then it is clear that the engine is no longer *provided* with a muffler or under-water exhaust because, by opening the cut-out, the *use* of the under-water exhaust or muffler ceases just as effectually as if the appliance had been physically detached from the engine and actually removed from the boat. When "cut-out," neither appliance plays nor can play any part whatever in the operation of the engine. In effect, when such an engine is equipped with "an under-water exhaust or a muffler," and at the same time has a device known as a "cut-out," so that the exhaust may, by the use of the cut-out, be directly into the open air, it is as if the engine were provided with two exhausts, one direct to the open air, and the other through the muffler or under water. But it is to be noted that the statute requires "an under-water exhaust or

muffler" and does not contemplate any other kind of exhaust, and makes no mention of the use of the "cut-out."

The argument urged by the defendant that the requirement of the law is satisfied if the engine is *equipped* with "an under-water exhaust or muffler," even though the same may at any time be rendered useless by the operation of the cut-out; and that the person operating or using the engine is guilty of no offense under the law, even though he may see fit at any tine to discontinue the use of the muffler, is not convincing, as it would, we think, lead to a manifest absurdity by rendering the law nugatory. Again, from the proceedings of the legislature during the passage of the act, whereby it appears that, as the act was first introduced it contained language, in the first section, requiring that the engine be "provided with an under-water exhaust or muffler, *so constructed and used as to effectively muffle the noise of the explosions thereof*," and that the words underlined were struck out by amendment, so that they did not appear in the act as finally passed, the defendant argues, in effect, that it appears to have been the express intent of the legislature to so frame the act as to require only the *equipment* of the engine with such under-water exhaust or muffler and not to require its use, unless the person operating the engine saw fit to use it at his own pleasure. This argument is not convincing. It may have been that the words were struck out as being entirely unnecessary, as indeed we think they were; but it appears to this court that there was in the words themselves a good reason why they should have been stricken out; the words "so constructed and used as to *effectively* muffle the noise of the explosions thereof," may have been deemed to be too severe, in view of the fact that they might be so construed as to require that there be absolutely no noise from the explosion; but it may be that with the use of the latest muffling devices there will still be some noise from the explosions to be detected at times and under certain circumstances. In other words, it may be that this language was omitted because it was deemed that the requirement set

forth in the phrase which was struck out was unreasonable and impossible of fulfillment. We do not think, therefore, that any such legislative intent as the defendant urges can be drawn from the amendment of the act during its course through the General Assembly.

(2) The defendant urges that the statute, being penal, should be strictly construed. We do not dispute this proposition, but we cannot so construe the act as to deprive it of all force and meaning, unless it is in fact meaningless.

(3) The cardinal rule for the guidance of courts is to find the legislative intention; in ascertaining this intention, they must not only consider the occasion and necessity for the law's enactment, but also have reference to the object intended to be accomplished. Courts will never, if avoidable adopt a construction of a statute which will lead to an absurdity or make it ineffective. 36 Cyc. 1110; Black, Interpretation of Laws (2nd Ed.), pp. 132, 461. Black says, at p. 461, "The rule that it must never be presumed that the legislature intended a vain thing, but the construction must always be such as to render their enactments effective, applies as well to the intrepretation of criminal and penal laws as to any other. Hence, the construction of a statute of this character must never be so strict (if another and reasonable construction can be found) as to deprive it of force and vitality." And, at p. 85, the same author says, in speaking of implications, "A necessary implication is one which, under all the circumstances, is compelled by a reasonable view of the statute and the contrary of which would lead to such improbable results as to constitute a legal absurdity." . . . "It is so strong a probability of intention that a contrary intention cannot reasonably be supposed." In Section 27, Endlich on the Interpretation of Statutes, the author says, "To arrive at the real meaning, it is always necessary to take a broad general view of the Act, so as to get an exact conception of its aim, scope and object. It is necessary according to Lord Coke to consider: 1, what was the law before the act was passed; 2, what was the mischief

or defect for which the law had not provided; 3, what remedy the legislature has appointed; and 4, the reason of the remedy;" and again he says that the true meaning is to be found, "not merely from the words of the Act, but from the cause and necessity of its being made, from a comparison of its several parts and from extraneous circumstances;" and again, in Section 73, "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view." Mr. Endlich further says, in Section 329, that the rule requiring penal statutes to be strictly construed was more rigorously applied in former times when it was punishable with death to cut down a cherry tree in an orchard or to be seen for a month in the company of gypsies. He states that it has become more and more generally recognized that the "paramount duty of the judicial interpreter is to put upon the language of the legislature honestly and faithfully its plain and rational meaning, and to promote its object;" and later, "A court is not at liberty to put limitations on general words which are not called for by the sense, or the objects, or the mischiefs of the enactment;" and again, that a strict construction of a statute "means no more than that it is to be interpreted according to its language." See, also, Lewis' Sutherland on Statutory Construction (2nd Ed.), § 86; Black Int. of Laws, pp. 132, 456, 458; Maxwell on Statutes (5th Ed.), p. 425; *Dekelt* v. *People*, 44 Colo. 525, 527; *U. S.* v. *Dillin*, 168 Fed. 813; *Bird* v. *U. S.*, 187 U. S. 118, 124; *Conrad* v. *State*, 75 Ohio St. 52, 69; 6 L. R. A. (N. S.) 1154, 1158; *U. S.* v. *Willberger*, 5 Wheat. 76, 95; *Northern Sec. Co.* v. *United States*, 193 U. S. 197, 358.

As was said by this court in *Greenough, Atty. Gen.* v. *Police Commissioners*, 29 R. I. 410 at p. 425: "Under the ordinary well-settled rules of construction of statutes, no construction will be adopted which will defeat the evident purpose of a statute. As we said in *State* v. *Drowne*, 20 R. I. 302, 306, ' we are bound to construe a statute in the most beneficial

way which its language will permit, in order to prevent inconsistency or injustice,' and 'such construction will be adopted as shall appear most reasonable, and best suited to accomplish the objects of the statute, and that a construction which leads to an absurdity will be avoided if possible.'"
See, also, *State* v. *Myette*, 30 R. I. 556, 558, 559.

In view of the foregoing, we answer the first question certified in the negative; the second question in the affirmative; the first part of the third question in the negative, and the last part of the third question in the affirmative.

The papers in the case will be remitted to the district court of the sixth judicial district, with the decision of this court certified thereon, for further proceedings.

*Henry C. Cram, Assistant City Solicitor,* for State.
*Greenough, Easton & Cross, Harry P. Cross,* of Counsel.
*Henry C. Hart,* for defendant.