## ERIE R. CO. v. LINDQUIST.

Circuit Court of Appeals, Third Circuit.
May 22, 1928.

No. 3787.

1. **Master and servant** ⊂⊃204(2), 228(2)—Railroad's operation of locomotive properly equipped with guard chains held not violation of Boiler Inspection Act, precluding defenses of contributory negligence and assumption of risk (45 USCA §§ 23, 30; Federal Employers' Liability Act [45 USCA §§ 51–59]).

Where railroad properly equipped locomotive with guard chains for use between it and tender, its negligence, if any, in the operation of such locomotive without such chains being put in place, was not a violation of Boiler Inspection Act (45 USCA §§ 23, 30; Comp. St. §§ 8631, 8639b), precluding defenses of contributory negligence and assumption of risk in an action for death of fireman, though railroad might still be chargeable with negligence under Federal Employers' Liability Act (45 USCA §§ 51–59; Comp. St. §§ 8657–8665).

2. **Master and servant** ⊂⊃265(14)—Deceased employee is presumed free from negligence.

In action against railroad for death of fireman, the latter, being dead, is presumed free from negligence, though presumption is rebuttable.

3. **Master and servant** ⊂⊃238(2)—Engineer and fireman have joint duty of keeping in place guard chains between locomotive and tender.

It is the joint duty of engineer and fireman to keep in place guard chains for use between locomotive and tender.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Action by Gertrude E. Lindquist, administratrix of the estate of Robert A. Lindquist, deceased, against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions for new trial.

Albert L. Thomas, of Meadville, Pa., for plaintiff in error.

Arthur L. Bates, of Meadville, Pa., for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

WOOLLEY, Circuit Judge. Robert A. Lindquist was killed when in the service of the defendant railroad company. His administratrix, to recover for his death, brought this action under the Federal Employers' Liability Act (35 Stat. 65; 36 Stat. 291 [45 USCA §§ 51–59, Comp. St. §§ 8657–8665]), charging as negligence generally violations of the Safety Appliance Act

(27 Stat. 531; 32 Stat. 943 [45 USCA §§ 1–10; Comp. St. § 8605 et seq.]), and particularly a violation of the Boiler Inspection Act (36 Stat. 913, as amended 38 Stat. 1192; Comp. Stat. § 8631; 8639b [45 US CA §§ 23, 30]). There is no dispute about the facts; the trouble is with their inferences and the applicable law.

[1] Lindquist had for a long time been a locomotive fireman on the Erie Railroad. On the day of the accident the engine which he was firing was drawing a freight train. As the train approached a bridge spanning a small creek he was raking down the fire with a fire-hook. Standing on the deck of the tender he gave a sudden cry and with his hands raised above his head he fell or was thrown through the space between the tender and the engine to the creek below and was killed. The bridge was of standard width and construction and there was no evidence that the fire-hook of standard length and of the kind ordinarily used, which when recovered was found bent, had come in contact with the bridge. The engine was of standard design and make and was equipped with guard-chains or safety-chains to be extended from the engine to the tender and intended to protect employees on the deck of the tender, particularly the fireman and engineer, from being thrown off by the jolting and swaying of the engine when it struck curves, frogs and switches. These chains, proper in size and properly positioned, were provided with hook and staple connection and were capable of being fastened and unfastened, raised and lowered, as desired. At the time of the accident they were down, that is, they were not in place.

On these facts the plaintiff in her original statement of claim charged that Lindquist's death was due to negligence of the defendant "in failing to equip and keep in place" on the engine proper guard-chains and also in requiring him to use a fire-hook of a dangerous length. By an amended statement of claim she generalized the negligence by charging the defendant with failure to afford its servant a safe place in which to work and to supply him proper tools with which to work, alleging negligence in respect to guard-chains by averring the defendant's failure to supply them rather than its failure to maintain them in place. At the trial, the plaintiff, being without evidence to prove her allegations of negligence in respect to a fire-hook of unlawful length and to lack of clearance between the engine and bridge, finally based her sole right to recover on the defendant's negligence not in failing to sup-

ply guard-chains, for it admittedly had supplied them, but in failing to keep the guard-chains in place as a violation of the Boiler Inspection Act and, of course, on the claim that this neglect contributed proximately to the death of the deceased.

The plaintiff had a verdict and to the judgment that followed the defendant sued out this writ of error, assigning many errors, the most of which relate in one way or another to its main assignment that there was no evidence that death resulted from a violation of the Boiler Inspection Act, and that, in consequence, the court erred in submitting the case under that Act, thereby depriving it of the defenses of contributory negligence and assumption of risk. The defendant makes this contention on the theory that when the Congress enacted safety appliance acts, and particularly the Boiler Inspection Act, and thus changed the carrier's rule for the protection of its employees from the common law duty of reasonable care to an absolute duty, it is presumed to have named all safety appliances required of the carrier outside the requirements under the common law. Pointing to the fact that neither in the Act itself nor in the regulations of the Interstate Commerce Commission enforcing the Act are guard-chains mentioned as required safety appliances, it contends, therefore, that unnamed instrumentalities of safety are not safety appliances required by the Act and if death results from their absence it is not the result of a violation of the Act. This question, we think, is only incidental to the law on which the case was submitted, which was that, on the jury finding certain facts, the operation of the engine with the guard-chains down was a violation of the Act.

The Boiler Inspection Act of 1911 provided:

"Section 2. That * * * it shall be unlawful for any common carrier * * * to use any locomotive ʸ * * in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put. * * * *"

The amendatory Act of 1915 declared that the Act of 1911 should "apply to and include the entire locomotive and tender and all their parts * * * and * * * appurtenances." Whether these provisions make the installation of guard-chains mandatory upon a carrier is not a question necessary to decide in this case, for here the carrier had voluntarily put them on the locomotive for the sole purpose of insuring the safety of its employees. For the sake of argument we shall assume they are safety appliances contemplated by the Act and the defendant installed them in obedience to its mandate. It follows therefore the defendant observed rather than violated the Act by installing them and it follows necessarily that as the defendant did not violate the Act in this regard, the plaintiff cannot recover on an allegation of negligence founded on such a violation. Hence the true question is —whether the defendant violated the Boiler Inspection Act (45 USCA §§ 22–34; Comp. St. § 8630 et seq.) by failing to maintain the guard-chains in place when operating the locomotive.

The duty which the several safety appliance acts impose on common carriers, differently described as carriers engaged and carriers moving traffic in interstate commerce, is to supply and equip their instrumentalities of commerce with appliances for the safety of their employees, naming them or empowering the Interstate Commerce Commission to specify them. The acts make the duty absolute, and whenever a failure to perform that duty is the proximate cause or a contributing cause of an injury, the acts not only make the carrier liable but the Federal Employers' Liability Act withdraws from it the defenses of the employee's assumption of risk and contributory negligence. Louisville & Nashville R. Co. v. Layton, 243 U. S. 617, 621, 37 S. Ct. 456, 61 L. Ed. 931; Great Northern R. R. Co. v. Donaldson, 246 U. S. 121, 38 S. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581; Lang v. New York Central R. Co., 255 U. S. 455, 459, 41 S. Ct. 381, 65 L. Ed. 729; Davis v. Wolfe, 263 U. S. 239, 243, 44 S. Ct. 64, 68 L. Ed. 284; B. & O. R. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419; Lehigh Valley R. Co. v. Beltz (C. C. A.) 10 F.(2d) 77; P. & R. Ry. Co. v. Auchenbach (C. C. A.) 16 F.(2d) 550, 551, 552; Id. (C. C. A.) 8 F.(2d) 350. But in all cases under these statutes that have come to our attention, performance is complete and liability thereunder ends when the carrier has observed their requirements by supplying and maintaining in operative condition the safety appliances required. We have not found any court, construing such statutes, that has held they extend liability to a carrier when its servants negligently operate safety devices properly supplied and properly maintained. For instance, the original Safety Appliance Act makes it unlawful "to haul * * * any car * * * not

equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." When a carrier has supplied couplers of that kind and maintained them in working order it has met that requirement of the Act. We have come upon no case holding or intimating that if an employee, with such appliances available, should enter between the cars to effect a manual coupling the carrier is liable *under the Safety Appliance Act* for an injury, whether brought about by his action alone or in conjunction with that of a fellow employee, although it may conceivably be liable under the Federal Employers' Liability Act. The only cases we have found which on first view seem to deviate from this rule are Philadelphia & R. Ry. Co. v. Winkler, 4 Pennewill (Del.) 387, 56 A. 112, and United States v. Illinois Central R. Co. (C. C. A.) 177 F. 801; Id., 223 U. S. 734, 32 S. Ct. 528, 56 L. Ed. 635. Both were under the Safety Appliance Act. In the first the engine tender (which was held to be a car within the meaning of the Act) and a nearby freight car were equipped with automatic couplers which, if permitted to operate, would couple by impact, but in addition the tender was equipped with a swinging bullnose and link by which alone a coupling could be made, not automatically but only by men going between the ends of the cars. The court held that this apparatus did not comply with the Safety Appliance Act. In the second case cars were equipped with automatic couplers as required by the Act, but were rendered wholly inoperative by reason of the manner in which one of the cars was loaded. In both cases the couplers were the right kind; in neither case was it charged that they were inoperative by reason of defects or being out of repair. In both cases it was held that as originally supplied the appliances conformed to the statute but the action of the carriers in rendering them inoperative was as though they had not supplied them at all and therefore constituted violations of the Act, within its spirit and provisions.

In the case at bar the carrier, as we have assumed, complied with the Boiler Inspection Act by equipping its locomotive with guard-chains admittedly suitable and efficient as means of protection and easy to adjust when needed for that purpose. With respect to this one of its "appurtenances," the locomotive was "in proper condition and safe to operate." If the defendant, complying with the requirement of the Act, made the locomotive safe to operate but later operated it in an unsafe way, for instance, by leaving the guard-chains down, its negligence, if any, was in operating the locomotive, not in preparing it for operation, and its negligence, constituting the proximate or contributing cause of the injury, must in that case have arisen from a violation of its duty properly to operate a locomotive lawfully equipped; proper equipment being an absolute duty imposed by statutory law and proper operation being a relative duty imposed by general law. With this view, we are constrained to find that the learned trial court fell into error when in stating a situation of fact for the finding of the jury it held, as matter of law, that (should they find the facts submitted) the operation of the locomotive with the guard-chains not in place was a violation of the Boiler Inspection Act. This error was prejudicial because, without regard to the validity of the plaintiff's cause of action when pressed on another ground under another Act, it there deprived the defendant of the defenses of the employee's assumption of risk and contributory negligence.

Having brought her action under the Federal Employers' Liability Act and having charged the defendant with negligence in operating its locomotive with the guard-chains down, the plaintiff charged the defendant with conduct which, though not a violation of the Boiler Inspection Act, may nevertheless be negligence for which, after formal amendment and on proper proofs, it is possible she may recover under the Federal Employers' Liability Act, notwithstanding our finding of error in respect to statutory negligence under the Boiler Inspection Act.

[2, 3] The defendant would be guilty of such negligence only through the negligence of its employees. The fireman, being dead, is presumed to have been free from negligence. That presumption is of course rebuttable. But the proofs disclose that the duty to maintain the chains in place was a joint duty of the fireman and engineer in respect to which the learned trial court ruled generally, and particularly as it bore on the question of negligence under the Boiler Inspection Act. The question of the defendant's liability for the failure of one or the other of these employees to perform that joint duty would arise in the same form at a trial whether on general or statutory negligence and if the case should go to a new trial under the Federal Employers' Liability Act on a charge of general negligence it would again have to be ruled upon.

As the learned trial court was required

to make and did make rulings and gave and withheld instructions on various issues other than that of negligence under the Boiler Inspection Act which were excepted to and are now assigned as errors, we have felt called upon, notwithstanding our finding of reversible error on one point, to review all of them not merely to determine past errors but to guard against future errors on the same evidence. Aside from its error in holding as matter of law that failure to maintain the guard-chains in place was a violation of the Boiler Inspection Act, we find the learned trial court committed no errors on any other issue or in any other respect. This includes its general ruling on the joint duty of the fireman and engineer.

The judgment is reversed with direction for a new trial conformably with the law of this opinion.